NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3525
_____

SPENCER SPIKER,

Appellant

v.

JACQUELYN WHITTAKER, individually; JENNIFER DIGIOVANNI;
LAURA DITKA; SEAN KELLY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 10-cv-00864)
District Judge:  Honorable Joy Flowers Conti
_____

Argued March 5, 2014
Before:  RENDELL, SMITH and HARDIMAN, *Circuit Judges*.

(Opinion Filed:  April 2, 2014)

Edward A. Olds [Argued]
1007 Mount Royal Boulevard
Pittsburgh, PA 15223-0000
          *Attorney for Appellant*

Bernard M. Schneider [Argued]
Brucker, Schneider & Porter
300 Weyman Road
Suite 320 Weyman Plaza
Pittsburgh, PA 15236-0000

*Attorneys for Jennifer DiGiovanni, Defendant-Appellee*

Jake S. Lifson [Argued]
Andrew F. Szefi
Allegheny County Law Department
300 Fort Pitt Commons
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
        *Attorneys for Sean Kelly, Defendant-Appellee*

_____

OPINION
_____

HARDIMAN, *Circuit Judge*.

Spencer Spiker appeals the order of the District Court dismissing his civil rights claims against the Allegheny County Board of Probation and Parole and several state employees responsible for his arrest and detention. We will affirm.

I

Because we write primarily for the parties, we recount only the essential facts of this case. In May 2009, Spiker pleaded guilty to indecent assault against a person under thirteen years of age in violation of 18 Pa. Cons. Stat. § 3126(a)(7) and endangering the welfare of a child in violation of 18 Pa. Cons. Stat. § 4304(a)(1). He was sentenced to five years probation and one year of intermediate punishment, and was required to register as a sex offender pursuant to 42 Pa. Cons. Stat. § 9795.1 (Megan's Law). Immediately after his sentencing, Spiker reported to the Allegheny County Board of

2

Probation and Parole Intake Office, where Sherri Dicicco processed his paperwork. Dicicco did not inform Spiker of his registration requirements and did not forward his information to the Pennsylvania state police, despite her legal obligation to do so under 42 Pa. Cons. Stat. § 9795.2(a)(4)(1).[1]

Three weeks later, Assistant District Attorney Jennifer DiGiovanni instructed Detective Sean Kelly to investigate whether Spiker had complied with the sexual offender registration requirements. Spiker claims this instruction was unusual and stemmed from "personal animus" DiGiovanni harbored toward him, alleging she was "fed false information about [him] by a mutual acquaintance . . . which prompted her to irrationally and arbitrarily view [him] differently from other defendants she prosecuted."

Upon investigating, Kelly reported that Spiker was not registered as a sex offender. Kelly then acquired a warrant and Spiker was arrested on July 1, 2009, for failure to register as a sex offender, just twenty-three days after his guilty plea and sentencing. He was released on non-monetary bond and instructed to meet the sexual

---

[1] Section 9795.2(a)(4)(1) provides:

Where the offender or sexually violent predator was granted parole by the Pennsylvania Board of Probation and parole or the court or is sentenced to probation or intermediate punishment, the board or county office of probation and parole shall collect registration information from the offender or sexually violent predator and forward that registration information to the Pennsylvania State Police.

offender registration requirements by July 8, 2009. He registered that same day, on July 1, 2009.

On July 2, 2009, Spiker was arrested again, this time for violating his probation, as his arrest the previous day was a violation of the terms of his release. Spiker claims Jacquelyn Whittaker, a supervisor of the Allegheny County Adult Probation office, sought the bench warrant and initiated this arrest at DiGiovanni's direction. Days later, Whittaker issued a detainer which resulted in Spiker remaining in custody for 320 days until his trial, where he was acquitted of the charge of failing to comply with the registration requirements of 42 Pa. Cons. Stat. § 9795.1.

II[2]

We exercise plenary review over the District Court's decision to grant a motion to dismiss. *Anspach v. City of Philadelphia*, 503 F.3d 256, 260 (3d Cir. 2007). In doing so, we presume the Complaint's well-pleaded facts to be true and view them in the light most favorable to the non-moving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). To survive a motion to dismiss, plaintiff must allege sufficient facts, which, taken as true, state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

Spiker alleged he was falsely arrested, falsely imprisoned, and subject to malicious prosecution in violation of his Fourth and Fourteenth Amendment rights; he sought relief under 42 U.S.C. § 1983.[3] To state a claim for relief under Section 1983, "a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013).

To state a plausible claim for false arrest, false imprisonment, or malicious prosecution under the Fourth Amendment, a plaintiff must plead sufficient facts to support a reasonable inference that the defendants acted without probable cause[4] and are not entitled to qualified immunity. "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are

---

[3] As the District Court correctly noted, we need only address Spiker's claims under the Fourth Amendment and not under the Fourteenth. *See Albright v .Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (internal citation and quotation marks omitted).

[4] To state a claim for malicious prosecution, Spiker must show:

(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceedings was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005).

sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). "A police officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Here, Spiker was not registered with the Pennsylvania State Police when Kelly obtained the warrant for his arrest for failure to register. Accordingly, defendants believed probable cause existed to arrest him under 18 Pa. Cons. Stat. § 4915 ("An individual who is subject to registration [under Megan's Law] . . . commits an offense if he knowingly fails to . . . register with the Pennsylvania State Police"). Additionally, defendants believed there was probable cause to arrest under 42 Pa. Cons. Stat. § 9795.2(a)(1), which provides:

> Offenders and sexually violent predators shall be required to register with the Pennsylvania State Police upon release from incarceration, upon parole from a State or county correctional institution or upon the commencement of a sentence of intermediate punishment or probation. For purposes of registration, offenders and sexually violent predators shall provide the Pennsylvania State Police with all current or intended residences, all information concerning current or intended employment and all information concerning current or intended enrollment as a student."

6

42 Pa. Cons. Stat. § 9795.2(a)(1). At the same time, as Spiker notes, § 9794.2(a)(4) also imposes a duty on the probation office to forward sex offenders' information to the state police.

> Where the offender or sexually violent predator was granted parole by the Pennsylvania Board of Probation and Parole or the court or is sentenced to probation or intermediate punishment, the board or county office of probation and parole shall collect registration information from the offender or sexually violent predator and forward that registration information to the Pennsylvania State Police.

42 Pa. Cons. Stat. § 9795.2(a)(4)(i).

Spiker argues that, pursuant to section 9795.2(a)(4)(i), the county probation officer bore the initial burden of registering him as a sex offender. He also averred in his proposed third amended complaint that the Probation Office had a policy that provides:

> On all Megan's Law cases, it is the probation officer's responsibility to check the Megan's Law website at http://www.pameganslaw.state.pa.us/ to verify the current registration status and addresses for residence, employment, and school. If the offender who is subject to the Megan's Law requirements is not registered, then the currently assigned probation officer is to register the offender by following the above stated procedures.

Spiker claims this policy is further indication that registration is not the primary responsibility of the offender. Defendants counter that "Spiker, as the sexual offender, had a duty to register with the state police that was independent of the probation office's duty to forward Spiker's registration information to the state police," and that therefore, they had probable cause to believe Spiker had violated the law.

7

In its careful and thorough opinion, the District Court held that "[t]he plain reading of section 9795.2, the other provisions of Megan's Law, and the legislative history of section 9795.2 . . . support the plausibility of both Spiker's and . . . defendants' interpretations" of the registration requirements. *Spiker v. Allegheny Cnty. Bd. of Probation and Parole*, 920 F. Supp. 2d 580, 596 (W.D. Pa. 2013). Therefore, it concluded that it need not resolve the probable cause question, as it could resolve the case on immunity grounds; regardless of whether defendants acted with probable cause, they were entitled to absolute immunity for all prosecutorial actions (barring Spiker's malicious prosecution claim), *see Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983"), and qualified immunity for the remainder of their actions. *Spiker*, 920 F. Supp. 2d at 596.

The District Court's immunity analysis was sound. To determine whether defendants are entitled to qualified immunity, we apply the two-part test in *Saucier v. Katz*, 533 U.S. 194 (2001), which asks (1) whether the state actor violated a constitutional right, and (2) whether the right was clearly established. *Id.* at 202, 210. A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201. In doing so, the court must consider "the state of the existing law at the time of the alleged violation and the [specific] circumstances confronting the officer." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010).

8

If the state officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," she is shielded from liability for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"The qualified immunity standard 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Gilles v. Davis*, 427 F.3d 197, 203 (3d Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). However, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19. The law is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that [his conduct] violates that right." *Anderson v. Creighton*, 483 U.S. 635, 649 (1987).

The District Court carefully considered whether DiGiovanni and Kelly acted reasonably for purposes of qualified immunity. It concluded that because "the interplay between a sexual offender's duty and the probation office's duty under section 9795.2 is not clearly established . . . . it would not have been clear to a reasonable officer in the position of DiGiovanni [or Kelly] that it was unlawful to obtain a warrant for Spiker's arrest for failing to register." *Spiker*, 920 F. Supp. 2d at 602. We agree. Spiker contends DiGiovanni knew that the Probation Intake Office had the initial duty of *forwarding* Spiker's registration information and that she should have been aware that there was a

9

mistake in the registration process. However, the test for qualified immunity is an objective standard; what DiGiovanni actually knew is irrelevant so long as a reasonable officer could have believed the action to be proper. *See, e.g.*, *Harlow*, 457 U.S. at 818.[5]

Therefore, DiGiovanni and Kelly are entitled to qualified immunity for both arrests—the first, for Spiker's failure to register, and the second, for his violation of parole.

## III

Spiker also alleges DiGiovanni and Kelly violated his Fourteenth Amendment equal protection rights. While equal protection claims are "typically . . . concerned with governmental classifications that affect some groups of citizens differently from others," *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008) (internal quotation omitted), they may also be brought by individuals as a "class of one." To state an equal protection claim under the "class of one" theory, a plaintiff must show that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips*, 515 F.3d at 243 (internal citation omitted). Here, Spiker alleges that twenty other unregistered sex offenders were not arrested or prosecuted—they were simply prompted

---

[5] Although the District Court did not address the requirement under 18 Pa. Cons. Stat. § 4915 that the failure must be "knowing," we note that a reasonable prosecutor in DiGiovanni's position could conclude that having met with probation (and presumably having been informed of his duty to register) and thereafter failing to register, Spiker's failure was knowing.

10

to register. However, as the District Court aptly noted, Spiker did not allege facts showing that Kelly was involved in any of those cases. Moreover, he fails to show that the other offenders were similarly situated. "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Here, Spiker was convicted of sexual assault of a child under 13 years of age and endangering the welfare of a minor of whom he was a parent or guardian under 18 Pa. Cons. Stat. §§ 3126(a)(7) and 4304(a)(1). Of the twenty other sex offenders to whom Spiker compares himself, only one was also convicted under § 4304(a)(1), and he registered 13 days sooner than Spiker. Therefore, the complaint does not establish that Spiker was unreasonably discriminated against and his equal protection claim fails.[6]

---

[6] Spiker also argues the District Court erred in dismissing his state law claims against Kelly under Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541–8564 (PSTCA).

The PSTCA provides absolute immunity to local agencies and its employees for official actions excluding eight statutorily defined exceptions. 42 Pa. Cons. Stat. §§ 8542, 8545. However, the PSTCA does not grant immunity to government employees whose conduct goes beyond negligence and constitutes "a crime, actual fraud, actual malice or willful misconduct." 42 Pa. Cons. Stat. § 8550. The Pennsylvania Supreme Court has held that "[w]illful misconduct, for the purposes of tort law . . . mean[s] conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." *Renk v. Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (internal citation omitted).

IV

For the reasons stated, we will affirm the District Court's order denying Spiker's

motion for leave to file a third amended complaint.

---

The District Court properly found that although Spiker claims Kelly "knew or should have know[n]" he lacked probable cause to seek Spiker's arrest, Spiker has not sufficiently alleged facts to support a plausible claim that Kelly's conduct rose to the level of "willful misconduct." *Spiker*, 920 F. Supp. 2d at 613. Therefore, we will affirm the District Court's dismissal of Spiker's PSTCA claim.