363 A.2d 1262

**INTERNATIONAL INVENTORS INCORPORATED,
EAST, a Virginia Corporation, Appellee,**

v.

**Martin BERGER, Appellant.**

Superior Court of Pennsylvania.

Argued April 19, 1976.

Decided Sept. 27, 1976.

Arnold M. Friedman, Pittsburgh, for appellant.

Robert A. Kelly, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court should not have enjoined his use of the corporate name "International Inventors".

On December 8, 1973, appellee, International Inventors Incorporated, East, a Virginia corporation, entered into a business agreement with appellant, Martin Berger. The agreement provided, in relevant part, the following: "WHEREAS, COMPANY has developed procedures for counseling, marketing, analysis, product evaluation, disclosure protection, patent searches, engineering services, professional produce presentations, marketing and related services to inventors; WHEREAS, COMPANY has developed an advertising, publicity and interviewing program, together with other methods for soliciting and securing inventor clients and is prompting a series of Inventor Consulting Services using the name INTERNATIONAL INVENTORS, and WHEREAS, DIRECTOR [appellant] is desirous of managing one or more similar type consulting services, and wishes to secure the benefits of the experience and promotional efforts of COMPANY, the use of COMPANY'S methods, materials, publications, and the development and marketing procedures and to use the name INTERNATIONAL INVENTORS; . . . IT IS THEREFORE MUTUALLY AGREED 1. That the parties hereto will form a Corporation and distribute shares of stock . . . within (30) days of the date of this Agreement. Further, the parties agree to choose a corporate name partially containing the words INTERNATIONAL INVENTORS or a derivative there-

of . . .." [1] The agreement further provided that appellant was to be appellee's exclusive director in Western Pennsylvania.

By agreement dated January 30, 1975, the parties agreed to terminate their relationship and thereby declare the December 8, 1973 agreement null and void. Prior to the effective date of the agreement, however, appellant's wife filed a fictitious name registration [2] with the Allegheny County Prothonotary indicating that she intended to do business under the name "International Inventors". On January 22, 1975, appellant's wife was deleted from and appellant added to the registration form. Thereafter, despite the January 30, 1975 agreement, appellant continued to do business using, among other names, the name "International Inventors".

On June 6, 1975, appellee filed a complaint in equity claiming that appellant, by conducting business under the name "International Inventors", had appropriated the appellee's business name. Appellee, therefore, requested that appellant be enjoined from using that name and that appellee be awarded damages in excess of $10,000. A hearing on the request for an injunction was held on June 12, 1975;[3] and on June 19, 1975, the lower court issued an order which enjoined appellant "from using the name International Inventors, International Inventor's, International Inventors Incorporated, International Inventors Incorporated, East, or other names similar to that of the Plaintiff." Appellant's exceptions, filed on June 23, 1975, were denied and this appeal followed.

Because the appellee failed to obtain a certificate of authority to do business in Pennsylvania, appellant ini-

---

1. It is not apparent from the record whether the envisioned corporation was ever formed. It is clear, however, that the appellant did conduct business as appellee's Pennsylvania representative.

2. Act of May 24, 1945, P.L. 967, § 1; September 23, 1959, P.L. 936, § 1; September 30, 1965, P.L. 571, §§ 1, 2; 54 P.S. § 28.1.

3. Appellee's request for damages was not litigated at this time.

tially contended at the June 12, 1975 hearing that the appellee was precluded from maintaining the instant action. Section 2001 of the Business Corporation Law [4] provides that "[a] foreign business corporation, before doing any business in this Commonwealth, shall procure a certificate of authority to do so from the Department of State . . . ." Section 2014 of the Business Corporation Law [5] specifies the penalty for doing business without a certificate: "[n]o foreign business corporation transacting business in this Commonwealth without a certificate of authority shall be permitted to maintain any action in any court of this Commonwealth until such corporation shall have obtained a certificate of authority." The lower court, relying on *Empire Excavating Company v. Maret Development Corporation*, 370 F.Supp. 824 (W.D.Pa.1974), held, however, that the appellee's subsequent compliance with § 2014 permitted it to proceed with the suit.

In *Empire*, the plaintiff, an Ohio corporation, filed suit on February 20, 1973, alleging breach of contract. On October 4, 1973, the defendant filed a motion for summary judgment asserting that the plaintiff was precluded from enforcing its claim because it failed to register to do business in Pennsylvania. On October 29, 1973, however, the plaintiff complied with the registration provision. In denying defendant's motion for summary judgment, the court held that subsequent compliance with the registration provision was sufficient to satisfy that requirement and enable a foreign corporation to use Pennsylvania courts: "Although some courts have equated the word 'maintain' with 'commence', the majority view among courts interpreting similar statutes in other states

4.  The Act of May 5, 1933, P.L. 364, Art. X, § 1001; January 18, 1966, P.L. (1965) 1305, § 40; July 20, 1968, P.L. 459, No. 216, § 52; 15 P.S. § 2001.

5.  The Act of May 5, 1933, P.L. 364, Art. X, § 1014; July 2, 1937 P.L. 2828, § 1; May 23, 1945; P.L. 937, § 8; January 18, 1966, P.L. (1965) 1305, § 48; 15 P.S. § 2014.

is that 'maintain' means to continue an action already begun. Those courts have held that compliance with the registration statute during the course of the lawsuit is sufficient to entitle a foreign corporation to continue its prosecution of that lawsuit. See cases cited in Annotation, 'Compliance after commencement of action as affecting application of statute denying access to courts or invalidating contract where corporation fails to comply with the regulatory statute,' 6 A.L.R.3d 326, 331–338 (1966); 23 Am.Jur.2d, Foreign Corporations § 282, page 285; Note, The Legal Consequences of Failure to Comply with Domestication Statutes, 110 U.Pa.L.Rev. 241, 266 (1961). See also, 75 A.L.R. 453, 465." *Empire Excavating Company v. Maret Development Corporation,* supra at 826.

The court further noted that § 2014 of the Business Corporation Law is based on § 117 (now § 124) of the Model Business Corporation Law and that the comment to § 117 supports the court's position: "Under the Model Act, a contract made by a nonqualified foreign corporation is not void but may be enforced by the foreign corporation by suit instituted after it qualifies. If suit has been instituted prior to qualification, the corporation may then qualify and continue its litigation without the necessity of refiling suit after qualification.' 2 Model Business Corp. Act, Annotated § 117, p. 672." [6] *Empire Excavating Company v. Maret Development Corporation,* supra at 826.

---

**6.** Finally, the court noted that the registration requirement contained in § 2001 would not be rendered ineffective by allowing subsequent compliance to satisfy § 2014. The court recognized that the "generally stated purposes of corporate registration statutes are to facilitate the enforcement of tax laws and to subject foreign corporations to legal process." *Empire Excavating Company v. Maret Development Corporation,* supra at 827. The court stated that other penalties, especially those contained in the tax laws, provide sufficient incentive for corporations to register. See, *e. g.,* The Act of August 24, 1951, P.L. 1417; § 11; December 27, 1951, P.L. 1763, § 1; July 17, 1953, P.L. 482, § 1; September 27, 1955, P.L. 626, § 1; April 30, 1957, P.L. 66, § 1; 72 P.S. § 3420n–11.

We find this reasoning persuasive. Had the appellee secured a certificate of authority during the course of the proceedings below, we would be inclined to reject the appellant's argument. In fact, however, the appellee did not obtain the certificate of authority until October 14, 1975, approximately four months after the June 19, 1975 order enjoining appellant from using the name "International Inventors". Under these circumstances, subsequent compliance cannot be used as a means to negate the clear mandate of the statute. Section 2014 prohibits an unregistered foreign corporation from "maintaining" any action until a certificate is obtained. While "maintaining" a suit requires more than merely instituting suit, it is obvious that a suit has been "maintained" when a final determination of an issue has been reached. In the instant case, the appellee not only instituted and litigated the preliminary injunction issue, but it also obtained all the relief it requested: an order enjoining appellant's actions. Thus, the appellee has successfully "maintained" an action in the courts of this Commonwealth in direct contravention to § 2014. When the appellant brought the § 2014 violation to the court's attention at the June 12, 1975 hearing, the court should have stayed the hearing pending compliance with § 2001. Instead, the court proceeded to grant appellee the relief it requested. The order of the lower court, therefore, must be reversed.

Order reversed.

SPAETH, J., did not participate in the consideration or decision of this case.

VAN der VOORT, J., dissents.