J-S01028-15

2015 PA Super 16

| | |
|---|---|
| DRAKE MANUFACTURING COMPANY, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| POLYFLOW, INC. | |
| Appellant | No. 959 WDA 2014 |

Appeal from the Judgment Entered June 11, 2014
In the Court of Common Pleas of Warren County
Civil Division at No(s): 406 OF 2009

BEFORE:  GANTMAN, P.J., JENKINS, J., and MUSMANNO, J.

OPINION BY JENKINS, J.:                    **FILED JANUARY 23, 2015**

Polyflow, Inc. ("Polyflow") appeals from a money judgment entered in favor of Drake Manufacturing Company, Inc. ("Drake") in Drake's action for breach of contract.  Polyflow argues that the trial court erroneously denied Polyflow's motion for judgment n.o.v., because at the time of trial, Drake lacked capacity to sue Polyflow due to Drake's failure to register in Pennsylvania as a foreign business corporation.

Polyflow timely raised Drake's lack of capacity to sue as an affirmative defense to Drake's action.  At trial, Polyflow demonstrated that Drake failed to obtain a certificate of authority to do business in Pennsylvania as a foreign corporation, thus prohibiting Drake from prosecuting this lawsuit.[1]

_____

[1] **See** 15 Pa.C.S. § 4141 (entitled "Penalty For Doing Business Without Certificate Of Authority") ("a nonqualified foreign business corporation doing business in this Commonwealth within the meaning of Subchapter B
*(Footnote Continued Next Page)*

Based on this defense, the trial court should have granted Polyflow's motion for compulsory nonsuit at the close of Drake's case-in-chief. Instead, it entered a verdict in Drake's favor.

Polyflow filed timely post-trial motions seeking judgment n.o.v. In response to Polyflow's post-trial motions, Drake submitted a certificate of authority to the trial court almost two months after the verdict. The trial court relied on this certificate as justification for denying Polyflow's post-trial motions. We construe our Supreme Court's decision in ***Claudio v. Dean Machine Co.***, 831 A.2d 140 (Pa.2003), to prohibit Drake from submitting evidence in post-trial proceedings that it failed to submit during trial due to its own lack of reasonable diligence. The trial court thus erred in denying Polyflow's post-trial motion for judgment n.o.v. We reverse and remand for entry of judgment in favor of Polyflow.

## I.

In late 2007, Drake, a Delaware corporation, entered an agreement to sell "couplings" to Polyflow, which the agreement defined as "products designed by Polyflex for use as termination fittings in Polyflex's Thermoflex

*(Footnote Continued)* ———————

(relating to qualification) shall not be permitted to maintain any action or proceeding in any court of this Commonwealth until the corporation has obtained a certificate of authority").

Tubing."[2]  The agreement provided that Drake would ship the couplings from Drake's plant in Sheffield, Pennsylvania to Polyflow.[3]  The record includes approximately 75 bills from Drake to Polyflow for couplings between August 2008 and April 2009.[4]  These bills indicate that Drake shipped most of the couplings from its plant in Sheffield, Pennsylvania to Polyflow's business establishment in Oaks, Pennsylvania.[5]  Other bills during the same time period indicate that Drake shipped equipment known as "portable swaging machines" to Polyflow.[6]  On occasion, Polyflow directed Drake to ship couplings to out-of-state destinations such as California, Holland and Canada.[7]

On June 10, 2009, Drake filed a civil complaint for breach of contract alleging Polyflow's failure to pay Drake for the couplings and portable swaging machines.[8]  Polyflow did not file preliminary objections to the

---

[2] Trial Transcript, 2/25/14 ("Tr."), plaintiff's exhibit A, ¶¶ 1.5, 6.1 (agreement between Drake and Polyflow).

[3] Plaintiff's exhibit A, ¶ 7.

[4] Plaintiff's exhibit G.

[5] Plaintiff's exhibit G.

[6] Plaintiff's exhibit D.

[7] Plaintiff's exhibit G.

[8] **See** Complaint, June 10, 2009.

complaint. On August 27, 2010, Polyflow filed an answer to the complaint which alleged in a new matter that "plaintiff is not registered and authorized to maintain suit in Pennsylvania."[9]

On July 29, 2013, Polyflow filed a pretrial statement which incorporated its new matter by reference and which listed as an exhibit "Pennsylvania Corporations Bureau information on [Drake]."[10]

The court held a short non-jury trial on the morning of February 25, 2014. Drake presented evidence of Polyflow's failure to pay for machinery that Drake provided.[11] Polyflow did not dispute its failure to pay Drake or contend that Drake failed to perform its duties under the 2007 agreement. Polyflow's only defense was that Drake lacked capacity to sue Polyflow due to Drake's failure to obtain a certificate of authority from the Department of State authorizing Drake to do business in Pennsylvania as a foreign corporation.[12] Drake did not possess a certificate of authority at the time of

_____

[9] Answer to Complaint with New Matter, August 30, 2010, ¶ 36.

[10] Polyflow's Pretrial Statement, July 29, 2013, p. 2.

[11] Tr., pp. 8-11, 17-30.

[12] Tr., pp. 12-16 & exhibit D-4 (certification from Department of State that examination of its records failed to disclose Drake's registration as a foreign corporation).

trial.[13]  Indeed, Drake did not even apply for a certificate of authority until the day of trial.[14]

At the close of Drake's case-in-chief, Polyflow moved for a compulsory nonsuit due to Drake's lack of capacity to sue, i.e., its failure to submit a certificate of authority from the Department of State into evidence.[15]  The court denied Polyflow's motion for nonsuit.[16]  Polyflow did not present any further evidence, and the court announced its verdict in favor of Drake in the amount of $291,766.61.[17]

On March 5, 2014, Polyflow filed timely post-trial motions seeking judgment n.o.v. due to Drake's failure to submit a certificate of authority into evidence.[18]  On March 17, 2014, the Department of State issued Drake a certificate of authority to do business in Pennsylvania as a foreign

---

[13] Trial Exhibit D-4 (Department of State record indicating Drake did not possess certificate of authority); Tr., pp. 13-14 (testimony by Drake's officer that "at this moment in time, I don't have [a certificate of authority] on me, no.  I'm not saying that we don't have anything, I just don't have it with me").

[14] **See** Plaintiff's Response in Opposition to Defendant's Motion for Post-Trial Relief, exhibit A (filed April 17, 2014) (signature line of application for certificate of authority dated February 25, 2014).

[15] Tr., pp. 30-33.

[16] **Id**.

[17] Tr., p. 36.

[18] Defendant's Motion for Post-Trial Relief, ¶ 1 (filed March 5, 2014).

corporation.[19]   On April 17, 2014, almost two months after the verdict, Drake submitted its certificate of authority as an exhibit to its response to Polyflow's post-trial motions.[20]   On May 23, 2014, relying on the delinquent certificate of authority, the trial court denied Polyflow's post-trial motions.[21] Polyflow thereupon entered judgment on the verdict and filed a timely notice of appeal.[22]   Both Polyflow and the trial court complied with Pa.R.A.P. 1925.

Polyflow raises the following issues on appeal:

> 1. Did the Court commit an error of law and/or abuse its discretion when it entered an award in favor of [Drake], and failed to enter nonsuit and/or dismiss [Drake]'s claims, where the evidence and pleadings demonstrated that [Drake] was a foreign business corporation that had not registered and obtained authority to maintain suit in Pennsylvania, pursuant to 15 Pa.C.S.A. § 4141(a)?
>
> 2. Did the Court commit an error of law and/or abuse its discretion when it based its decision on documents not in evidence, such as the corporate registration documents attached to [Drake]'s unverified response to [Polyflow]'s post-trial motion?

---

[19] Plaintiff's Response in Opposition to Defendant's Motion for Post-Trial Relief, exhibit A (filed April 17, 2014).

[20] *Id*.

[21] Memorandum Opinion, May 23, 2014 ("Memorandum Opinion"), pp. 2, 5-6.

[22] Praecipe for Entry of Judgment and Notice of Appeal (filed June 11, 2014). **See also** Pa.R.Civ.P. 227.4(1) (upon praecipe of any party, prothonotary shall enter judgment on the decision of a judge following a non-jury trial).

3. Did the Court commit an error of law and/or abuse its discretion when it failed to determine that the statute of limitations prevents [Drake] from obtaining judgment in this case?

4. Did the Court commit an error of law and/or abuse its discretion when it failed to determine that [Drake] was first required to register and obtain authority from the Department of State before it could lawfully initiate legal proceedings in the Commonwealth?

5. Did the Court commit an error of law and/or abuse its discretion in determining that [Drake] was not required to respond to [Polyflow]'s Answer and New Matter allegation about [Drake] not being registered or authorized to maintain suit in Pennsylvania, and in failing to determine that [Drake] was required to answer [Polyflow]'s Request for Admissions including an acknowledgment that [Drake] is not a registered corporation in Pennsylvania?

6. Did the Court commit an error of law and/or abuse its discretion, to the extent that it based its decision on a determination that the defenses raised in [Polyflow]'s New Matter were required to be raised by way of Preliminary Objections, Motion for Judgment on the Pleadings or Motion for Summary Judgment?[23]

We distill these questions into three issues: (1) whether Polyflow preserved the issue of Drake's lack of capacity to sue[24]; (2) whether the trial court should have granted Polyflow's post-trial motion for judgment n.o.v. due to

_____

[23] Brief For Appellant, p. 6.

[24] Issue 6 in Polyflow's brief.

Drake's failure to present a certificate of authority prior to the verdict[25]; and (3) whether the trial court erroneously denied Polyflow's post-trial motions by accepting into evidence a certificate of authority that Drake obtained after the verdict.[26] Resolution of these issues eliminates the need to review the two remaining issues in Polyflow's brief.[27]

II.

We find that Polyflow preserved for appeal the issue of Drake's lack of capacity to sue.

We begin by analyzing whether Polyflow timely raised this issue in its pleadings. A defendant timely objects to a plaintiff's lack of capacity to sue if the defendant raises this issue in preliminary objections **or** in its answer to the complaint. *See* Pa.R.Civ.P. 1028(a)(5) (defendant may raise lack of capacity to sue as preliminary objection); ***Erie Indemnity Co. v. Coal Operators Casualty Co.,*** 272 A.2d 465, 467 (Pa.1971) ("the issue of incapacity to sue is waived unless it is specifically raised in the form of a preliminary objection **or** in the answer to the complaint") (emphasis added); ***Huddleston v. Infertility Center of America***, 700 A.2d 453, 457 (Pa.Super.1997) (citing ***Erie Indemnity***) ("challenges to a litigant's capacity

---

[25] Issues 1 and 4 of Polyflow's brief.

[26] Issue 2 of Polyflow's brief.

[27] Issues 3 and 5 of Polyflow's brief.

to sue must be raised by way of preliminary objections or answer"); ***In re Estate of Alexander,*** 758 A.2d 182, 189 (Pa.Super.2000) (citing ***Huddleston***).

It bears emphasis that lack of capacity to sue is treated differently than other issues listed in Rule 1028. Multiple issues listed in Rule 1028 are waived if the defendant fails to raise them in preliminary objections, e.g., improper service of process or lack of personal jurisdiction.[28] Other issues, such as lack of subject matter jurisdiction or failure to join an indispensable party, are never waived.[29] Lack of capacity to sue falls between these two extremes: it is waived not merely through omission from preliminary objections, but through omission from both preliminary objections **and** the answer to the complaint. ***Erie Indemnity***, ***supra***.

Although Polyflow did not file preliminary objections alleging Drake's lack of capacity to sue, it did raise Drake's lack of capacity in paragraph 36

---

[28] ***See Crown Const. Co. v. Newfoundland Am. Ins. Co.***, 239 A.2d 452, 454 (Pa.1968) (defendant waived objection to defective service by failing to raise issue in preliminary objections and opting instead to file answer to complaint); ***Yentzer v. Taylor Wine Co.***, 186 A.2d 396, 398 (Pa.1962) (objection to personal jurisdiction is waived through failure to raise this issue in preliminary objections).

[29] ***See Cobbs v. SEPTA***, 985 A.2d 249, 255 (Pa.Super.2009) (subject matter jurisdiction is never waived and may be raised at any time by parties or by court *sua sponte*); ***Hart v. O'Malley***, 647 A.2d 542, 549 (1994) (issue of failure to join indispensable party is never waived).

of its answer with new matter. Therefore, Polyflow properly raised this issue in the pleadings.

Next, Polyflow preserved this issue by requesting a compulsory nonsuit at the close of Drake's case-in-chief on the ground that Drake lacked capacity to sue due to its failure to submit a certificate of authority into evidence. ***Youst v. Keck's Food Service, Inc.***, 94 A.3d 1057, 1071 (Pa.Super.2014) (party preserves right to request judgment n.o.v. post-trial by moving either for directed verdict or compulsory non-suit at trial).

Finally, Polyflow preserved this issue for appeal by filing timely post-trial motions seeking judgment n.o.v. on the ground that Drake failed to submit a certificate of authority. Pa.R.Civ.P. 227.1(a)(2), (c)(2) (within ten days after verdict in non-jury trial, party may file post-trial motions requesting court to direct entry of judgment in its favor).

## III.

We turn to whether Polyflow was entitled to judgment n.o.v. due to Drake's failure to submit a certificate of authority. A motion for judgment n.o.v. is a post-trial motion which requests the court to enter judgment in favor of the moving party. There are two bases on which the court can grant judgment n.o.v.:

> [O]ne, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences

decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Polett v. Public Communications, Inc.*, 83 A.3d 205, 212 (Pa.Super.2013). In an appeal from the trial court's decision to deny judgment n.o.v.,

we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

*Id*. at 211.

Three statutes within Chapter 41, Subchapter B of the Corporations and Unincorporated Associations Code ("Code"), 15 Pa.C.S. § 101 *et seq*., define when a foreign business corporation must obtain a certificate of authority and the penalties for failure to obtain a certificate. *See* 15 Pa.C.S. §§ 4121, 4122 and 4141.

Section 4121 provides: "A foreign business corporation, before doing business in this Commonwealth, shall procure a certificate of authority to do so from the Department of State, in the manner provided in this subchapter..." 15 Pa.C.S. § 4121(a).

- 11 -

While the Code does not expressly define "doing business", section 4122(a) identifies activities which do *not* constitute "doing business", either individually or collectively. Section 4122(a) provides:

> Without excluding other activities that may not constitute doing business in this Commonwealth, a foreign business corporation shall not be considered to be doing business in this Commonwealth for the purposes of this subchapter by reason of carrying on in this Commonwealth any one or more of the following acts:
>
> (1) *Maintaining or defending any action* or administrative or arbitration proceeding or effecting the settlement thereof or the settlement of claims or disputes.
>
> (2) Holding meetings of its directors or shareholders or carrying on other activities concerning its internal affairs.
>
> (3) Maintaining bank accounts.
>
> (4) Maintaining offices or agencies for the transfer, exchange and registration of its securities or appointing and maintaining trustees or depositaries with relation to its securities.
>
> (5) Effecting sales through independent contractors.
>
> (6) Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, and maintaining offices therefor, where the orders require acceptance without this Commonwealth before becoming binding contracts.
>
> (7) Creating as borrower or lender, acquiring or incurring, obligations or mortgages or other security interests in real or personal property.
>
> (8) *Securing or collecting debts* or enforcing any rights in property securing them.

(9) *Transacting any business in interstate or foreign commerce*.

(10) *Conducting an isolated transaction completed within a period of 30 days and not in the course of a number of repeated transactions of like nature*.

(11) Inspecting, appraising and acquiring real estate and mortgages and other liens thereon and personal property and security interests therein, and holding, leasing, conveying and transferring them, as fiduciary or otherwise.

*Id*. (emphasis added). The Committee Comment to section 4122 explains:

[Section 4122] does not attempt to formulate an inclusive definition of what constitutes the transaction of business. Rather, the concept is defined in a negative fashion by subsection (a), which states that certain activities do not constitute the transaction of business. In general terms, *any conduct more regular, systematic, or extensive than that described in subsection (a) constitutes the transaction of business and requires the corporation to obtain a certificate of authority*. Typical conduct requiring a certificate of authority includes *maintaining an office to conduct local intrastate business*, *selling personal property not in interstate commerce*, entering into contracts relating to local business or sales, and owning or using real estate for general corporate purposes

. . .

A corporation is not 'doing business' *solely because* it resorts to the courts of this Commonwealth to recover an indebtedness, enforce an obligation, recover possession of personal property, obtain the appointment of a receiver, intervene in a pending proceeding, bring a petition to compel arbitration, file an appeal bond, or pursue appellate remedies

. . .

- 13 -

The concept of 'doing business' involves regular, repeated, and continuing business contacts of a local nature. A single agreement or isolated transaction does not constitute the doing of business if there is no intention to repeat the transaction or engage in similar transactions. Since the question is entirely one of fact, subsection (a)(10) uses the partially objective test that a transaction completed within 30 days does not constitute 'doing business' if it is not one in the course of 'repeated transactions of a like nature.'

*Id*. (emphasis added).

Lastly, section 4141(a) provides in relevant part that "[a] nonqualified foreign business corporation doing business in this Commonwealth within the meaning of Subchapter B (relating to qualification) shall not be permitted to maintain any action or proceeding in any court of this Commonwealth until the corporation has obtained a certificate of authority." 15 Pa.C.S. § 4141(a). A foreign corporation may comply with this requirement by obtaining a certificate of authority "during the course of a lawsuit." *International Inventors Inc., East v. Berger*, 363 A.2d 1262, 1264 (Pa.Super.1976).[30]

Applying section 4141(a), this Court has held that a foreign corporation that failed to obtain a certificate of authority could not bring suit

---

[30] As this case demonstrates, however, "during the course of a lawsuit" does not mean that the corporation can wait until the post-trial stage to submit a certificate of authority. The corporation leaves itself vulnerable to a compulsory nonsuit if it fails to submit a certificate of authority into evidence before the close of its case-in-chief. *See* pp. 16-25, *infra*.

in Pennsylvania, because its entry into a contract with the defendant, a Pennsylvania corporation, and its shipment of lighting fixtures to Pennsylvania on six occasions over approximately six months constituted "doing business in this Commonwealth". ***Leswat Lighting Systems, Inc. v. Lehigh Valley Restaurant Group, Inc.***, 663 A.2d 783, 785 (Pa.Super.1995).

With these statutes as backdrop, we construe the evidence adduced during trial in the light most favorable to Drake, the verdict winner. Even under this deferential standard of review, the evidence demonstrates that Drake failed to submit a certificate of authority into evidence prior to the verdict in violation of 15 Pa.C.S. § 4121(a). Therefore, the trial court should not have permitted Drake to prosecute its action. 15 Pa.C.S. § 4141(a).

The trial court contends that Drake is exempt from the certificate of authority requirement because it merely commenced suit in Pennsylvania to collect a debt, conduct that does not constitute "doing business" under section 4122(a)(1) and (8).[31] Drake did much more, however, than file suit or attempt to collect a debt. Drake maintains an office in Pennsylvania to conduct local business, conduct which "[typically] require[s] a certificate of authority." 15 Pa.C.S. § 4122, Committee Comment. Drake also entered into a contract with Polyflow, and, on dozens of occasions over an eight

---

[31] Pa.R.A.P. 1925(a) Opinion, p. 5 (filed August 6, 2014) ("Pa.R.A.P. 1925(a) Opinion").

month period, shipped couplings and portable swaging machines to Polyflow's place of business in Pennsylvania -- far more than the "isolated transaction" exempted under section 4122(a)(10) or the six shipments over a six-month period that we previously held constituted "doing business". *See Leswat Lighting Systems, supra*. In short, Drake's conduct was "more regular, systematic, [and] extensive than that described in [section 4122(a), [thus] constitut[ing] the transaction of business and requir[ing] [Drake] to obtain a certificate of authority." *See* 15 Pa.C.S. § 4122, Committee Comment.

We also hold that Drake needed a certificate of authority to sue Polyflow in Pennsylvania for Polyflow's failure to pay for out-of-state shipments in California, Canada and Holland. A foreign corporation that "does business" in Pennsylvania within the meaning of section 4122 must obtain a certificate in order to prosecute a lawsuit in this Commonwealth, regardless of whether the lawsuit itself concerns in-state conduct or out-of-state conduct.

The trial court thus erred by denying Polyflow's motion for judgment n.o.v.

IV.

Three weeks after the verdict, Drake obtained a certificate of authority from the Department of State. Almost two months after the verdict, Drake submitted this certificate in response to Polyflow's post-trial motion seeking

- 16 -

judgment n.o.v.  The trial court relied on this certificate of authority as its basis for denying Polyflow's post-trial motions.[32]  This was error.

A party cannot use the post-trial motion stage as a vehicle for introducing new evidence that it could have submitted prior to the verdict through the exercise of reasonable diligence.  *Claudio v. Dean Machine Co.*, *supra*.  Therefore, Drake had no right to submit the certificate of authority into the record in the post-trial motion stage.

In *Claudio*, our Supreme Court addressed "whether a trial court can, pursuant to [Pa.R.Civ.P.] 227.1, conduct a post-trial evidentiary hearing and grant post-trial relief to correct an error when the error alleged is attributable. . .to the party seeking relief." *Claudio*, 831 A.2d at 141.  The Court held that Rule 227.1 "is not a vehicle by which a trial court can correct an error of a party." *Id*.  Rule 227.1 is only a vehicle for the court "to correct its own error." *Id*. at 145 (collecting cases).

The two plaintiffs in *Claudio* filed a personal injury complaint against Dean Machine Company ("DMC"). *Id*.  Dean Machine, Inc. ("DMI") filed an answer to the complaint averring that the complaint incorrectly designated DMI as "Dean Machine Company". *Id*. at 141-42.  Shortly before trial, DMI filed a motion *in limine* to preclude the Claudios from presenting any evidence against DMI on the ground that the plaintiffs had signed a

---

[32] Pa.R.A.P. 1925(a) Opinion, p. 5.

stipulation to dismiss DMI from the case. *Id*. at 142. The trial court denied this motion. *Id*. In addition, the plaintiffs filed a motion to amend the caption to substitute DMI for DMC. *Id*. The trial court denied this motion as well. *Id*.

The jury entered two verdicts against DMC: a verdict for $2.5 million in favor of one plaintiff and a verdict of $150,000 in favor of the other plaintiff. *Id*. at 142-43. The plaintiffs filed a post-trial motion under Rule 227.1 to amend the caption and mold the verdict to enter judgment against DMI. *Id*. at 143. The court permitted the plaintiffs to present evidence on the issue of whether DMI was the successor corporation to DMC. *Id*. Following receipt of evidence, the court granted the plaintiffs' motion to substitute DMI for DMC and enter judgment against DMI. *Id*. The Superior Court vacated the judgment of the trial court and remanded for a new trial. *Id*. The Superior Court determined that the trial court acted properly when it amended the caption and molded the verdict to substitute DMI as the proper defendant, but it reasoned that the proper course of action following substitution was to remand for a new trial. *Id*. at 143-44.

Our Supreme Court reversed the Superior Court and remanded the case with instructions to enter judgment solely against DMC. *Id*. at 147. The Court reasoned that the purpose of Rule 227.1 is to permit the trial court to correct its own error prior to entry of judgment, not the error of a party. *Id*. at 145. The plaintiffs failed to present evidence prior to the

verdict that DMI was the successor to DMC. "The failure of a party to present sufficient evidence before or during trial to support a decision in that party's favor," the Court held, "cannot be cured by a motion filed pursuant to Rule 227.1." *Id*.

One exception to this principle, the Court acknowledged, is the party's right to seek a new trial under Rule 227.1 based on evidence discovered after trial. *Id*. at 146. This exception is quite narrow:

> [A]fter-discovered evidence, to justify a new trial, must have been discovered after the trial, be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility, and must be such as would likely compel a different result. . .A court should not grant a new trial based on after-discovered evidence unless the proponent can convincingly show that he was unable to obtain such testimony for the trial by use of reasonable diligence.

*Id*. (citations omitted). The Court determined that the after-discovered evidence exception did not apply, because the plaintiffs "[failed to] establish[] that the evidence they presented to the trial court after trial could not have been presented to the trial court in their pre-trial motion to amend the caption." *Id*.

In sum, the trial court in *Claudio*, based on the information available to it at the time, properly rejected the plaintiffs' pre-trial motion to amend the caption. *Id*. The trial court erred, however, "in granting an evidentiary hearing under the guise of Rule 227.1(a)(5)" to allow the plaintiffs to

- 19 -

accomplish post-trial what they could have accomplished during trial, viz., adding evidence to the record that DMI was the successor to DMC. *Id*.

Here, as in *Claudio*, the trial court erred by admitting evidence during the post-trial stage that Drake could easily have submitted during trial. Drake filed suit in June 2009, and Polyflow filed an answer to the complaint in August 2010 which raised the defense that Drake was not registered or authorized to do business in Pennsylvania. The case did not go to trial until February 2014, 3½ years later. During this lengthy interim, Drake failed to obtain a certificate of authority from the Department of State. It waited almost two months *after* the verdict before submitting the certificate to the court.[33] It provided no explanation for its failure to present a certificate during trial.

*Claudio* prohibits a party from using post-trial proceedings to plug evidentiary holes that it could have filled before the verdict through the exercise of reasonable diligence. *Id*. at 146. Here, Drake had no valid reason for failing to submit the certificate of authority during trial and therefore could not use post-trial proceedings to correct its own error. *Id*. at 145.

_____

[33] As stated above, Drake received the certificate three weeks after the verdict but then waited another month before submitting it to the trial court. Even if Drake submitted the certificate on the day of receipt from the Department of State, it still would have been inadmissible under *Claudio*.

- 20 -

We acknowledge one factual distinction between *Claudio* and this case. In *Claudio*, the parties who *filed* post-trial motions wrongfully submitted evidence during post-trial proceedings in *support* of their motions. In this case, Drake, the party *responding* to post-trial motions, wrongfully submitted evidence during post-trial proceedings as a *rebuttal* to Polyflow's motion for judgment n.o.v. We do not find this distinction material. *Claudio* emphasizes that the purpose of post-trial motions is for the court to correct its own errors, not for parties to remedy their own mistakes. *Id*., 831 A.2d at 141. This principle applies with equal force to parties who file post-trial motions and parties responding to post-trial motions who, like Drake, might attempt to use post-trial proceedings as a vehicle for curing their own trial errors. Allowing respondents such as Drake to submit evidence during post-trial proceedings propagates the very evils that our Supreme Court warned against long ago: it transforms trial into a "dress rehearsal," "removes the professional necessity for trial counsel to be prepared to litigate the case fully at trial and to create a record adequate for appellate review," indulges an "ill-prepared advocate's hope" that the court "will come to his aid after the fact and afford him relief" despite his failure to present his case fully at trial, "[penalizes] the diligent and prepared trial lawyer and his client" by forcing them to relitigate their case, "denies the trial court...the opportunity to correct error" during trial, and causes unnecessary delay of other cases not yet tried for the first time. *Dilliplaine*

*v. Lehigh Valley Trust Co.*, 322 A.2d 114, 116 (Pa.1974). The certificate

of authority was inadmissible during post-trial proceedings, and absent its

admission, Polyflow was entitled to judgment n.o.v.[34]

_____

[34] Although the Supreme Court's decision in **Claudio** is the most important case in this area, we also regard our own decision in **Berger**, *supra*, as instructive. In **Berger**, a Virginia corporation sued a Pennsylvania defendant claiming that the defendant had appropriated its business name. The defendant contended that the corporation lacked standing to prosecute its action under 15 Pa.C.S. § 2014 due to its failure to obtain a certificate of authority. The trial court rejected the defendant's argument and entered a preliminary injunction prohibiting the defendant from using the plaintiff's name. Four months after the preliminary injunction, the plaintiff obtained a certificate of authority. This Court reversed the order granting the plaintiff a preliminary injunction due to the corporation's failure to obtain a certificate of authority at the time of the injunction hearing. We reasoned:

> Had the [corporation] secured a certificate of authority during the course of the proceedings below, we would be inclined to reject the [defendant's] argument. In fact, however, the [corporation] did not obtain the certificate of authority until October 14, 1975, approximately four months after the June 19, 1975 order enjoining [the defendant] from using the name 'International Inventors'. Under these circumstances, subsequent compliance cannot be used as a means to negate the clear mandate of the statute. Section 2014 prohibits an unregistered foreign corporation from 'maintaining' any action until a certificate is obtained. While 'maintaining' a suit requires more than merely instituting suit, it is obvious that a suit has been 'maintained' when a final determination of an issue has been reached. In the instant case, the [corporation] not only instituted and litigated the preliminary injunction issue, but it also obtained all the relief it requested: an order enjoining [the defendant's] actions. Thus, the [corporation] has successfully 'maintained' an action in the courts of

*(Footnote Continued Next Page)*

The trial court rationalizes Drake's tardy submission of its certificate of authority by stating that "compliance with [section 4121] during the pendency of the litigation has been deemed to be sufficient compliance with the statutory registration requirements."[35]  We agree with this concept -- so long as the corporation submits the certificate of authority into evidence before the verdict.  Indeed, when the defendant objects during trial to the lack of a certificate of authority, the court may keep the record open and continue trial pending the submission of the certificate into evidence.  **Berger, supra**, 363 A.2d at 270.  In addition, after the close of evidence, but before the verdict, the court may reopen the record to receive the certificate into evidence.  **In re J.E.F.,** 409 A.2d 1165, 1166 (Pa.1979) ("the general rule is that a court may, in its discretion, reopen the case after a party has closed for the taking of additional testimony, but such matters are

*(Footnote Continued)* ────────────

> this Commonwealth in direct contravention to [section] 2014. When the appellant brought the [section] 2014 violation to the court's attention at the June 12, 1975 hearing, the court should have stayed the hearing pending compliance with [section] 2001.

**Berger**, 363 A.2d at 270.  **Berger** is not identical to the present circumstances because it concerned a preliminary injunction instead of a trial, but **Berger's** logic still extends to this case.  Obtaining a certificate of authority after the trial court's decision -- or, as **Berger** puts it, "subsequent compliance" with the statute -- does not cure the insufficiency of the hearing record.  **Id**.

[35] Memorandum Opinion, pp. 5-6.

peculiarly within the sound discretion of the trial court") (citations omitted). Upon entry of the verdict, however, the window of opportunity for submitting the certificate closes unless it is admissible under the after-discovered evidence exception. This exception did not apply in the present case.

The trial court also asserts that it could take judicial notice of the certificate of authority as a public document during post-trial motions.[36] We do not agree. It is true that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Pa.R.E. 201(b). It is also true that the court can take judicial notice of public documents. **Bykowski v. Chesed, Co.,** 625 A.2d 1256, 1258 n.1 (Pa.Super.1993) (court properly took judicial notice of public document in Recorder of Deeds when ruling on preliminary objections to complaint). In addition, the court may take judicial notice at any stage of the proceeding. Pa.R.E. 201(d).

Nevertheless, we will not allow judicial notice to trespass the well-defined boundary of admissibility articulated in **Claudio**. A trial court cannot take judicial notice of a public document which did not even exist during trial due to the proponent's lack of reasonable diligence and which the proponent

---

[36] Pa.R.A.P. 1925(a) Opinion, p. 7.

- 24 -

fails to obtain or submit until post-trial proceedings. To permit judicial notice under these circumstances would allow Drake to circumvent **Claudio's** prohibition against parties using post-trial proceedings to correct their own trial errors.

The trial court also insists that the "equities" entitle Drake to prevail, because Polyflow should not be permitted to get away with withholding payment for some $300,000.00 in merchantable goods.[37] Although we can understand the trial court's reluctance to rule in Polyflow's favor under these circumstances, the fact remains that (1) Polyflow timely raised the defense of Drake's lack of capacity to sue, (2) Drake failed to cure its lack of a certificate of authority during the next 3½ years, (3) Drake failed to refute this defense at trial, and (4) this defense was fatal to Drake's case. Because Polyflow presented a meritorious legal defense, the trial court was dutybound to rule in its favor, regardless of its perception of the equities.

Along the same lines, the trial court suggests that Polyflow engaged in "gamesmanship" by stating during a pretrial conference that the case was close to settlement without mentioning Drake's lack of capacity to sue, but then raising the lack of capacity defense at trial.[38] This position might be more persuasive had the parties stipulated during the pretrial conference to

_____

[37] Pa.R.A.P. 1925(a) Opinion, p. 6.

[38] Pa.R.A.P. 1925(a) Opinion, p. 6.

limit trial to specific issues other than Drake's lack of capacity to sue. Pa.R.Civ.P. 212.3(d) ("the court may make an order reciting the action taken at the [pretrial] conference and the agreements made by the parties as to any of the matters considered, and limiting the issues for trial to those not disposed of by admissions or agreements of the attorneys. Such order when entered shall control the subsequent course of the action unless modified at the trial to prevent manifest injustice"). In this case, however, the trial court did not enter any order stating that the parties agreed to limit trial to issues unrelated to Drake's lack of capacity. Moreover, contrary to the trial court's suggestion, Polyflow did not conceal the issue of Drake's lack of capacity to sue. Polyflow placed Drake on notice of its lack of capacity defense both in its answer to the complaint with new matter and in its pretrial statement, which incorporated by reference all defenses in its new matter and listed as an exhibit "Pennsylvania Corporations Bureau information on [Drake]." Nothing in the record indicates that Polyflow agreed at any time during this case to abandon this defense. Since Polyflow did all that the rules mandated, we do not regard its conduct as "gamesmanship".

V.

For the foregoing reasons, we hold that the trial court erred in denying Polyflow's motion for judgment n.o.v. We reverse the order denying

Polyflow's post-trial motions and remand for entry of judgment n.o.v. in favor of Polyflow.

Judgment reversed. Case remanded for entry of judgment n.o.v. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/23/2015