J-A02025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KARDEN CONSTRUCTION SERVICES, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| BRIAN D'AMICO | |
| | No. 1351 MDA 2015 |

Appeal from the Judgment Entered September 2, 2015
In the Court of Common Pleas of Berks County
Civil Division at No: 09-6787

BEFORE:  PANELLA, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 25, 2016**

Appellant/plaintiff Karden Construction Services, Inc. ("Karden") appeals from the September 2, 2015 judgment entered in the Court of Common Pleas of Berks County ("trial court"), following the denial of Karden's post-trial motion seeking judgment notwithstanding the verdict ("JNOV").  Upon review, we affirm in part, reverse in part, and remand.

The facts and procedural history underlying this appeal are undisputed.  On June 2, 2009, Karden filed a complaint against Appellee/defendant Brian D'Amico ("D'Amico"), alleging breach of contract and, alternatively, unjust enrichment.  Karden alleged that, on January 4, 2007, D'Amico entered into an oral agreement with Karden for the provision

_____

[*] Former Justice specially assigned to the Superior Court.

of professional services to assist with litigation and construction management. Specifically, Karden alleged that D'Amico engaged Karden as an expert to assist D'Amico in a lawsuit D'Amico had filed against a contractor and a home inspector in connection with the construction of D'Amico's new home. Karden further alleged that it rendered approximately one hundred thirteen (113) hours of professional services to D'Amico from January 4, 2007 until December 8, 2008, valued at $21,338.70 when combined with out-of-pocket expenses. Karden alleged that D'Amico failed to pay Karden for the professional services and, as a result, breached the oral agreement. Alternatively, Karden alleged that D'Amico unjustly enriched himself by retaining the benefits of the services provided to him.

This matter proceeded to a non-jury trial, at which both parties presented testimony. The trial court summarized the evidence as follows:

> Dennis Link has been the president and sole employee of [Karden] since 1999. [Karden] is a corporation that provides construction representation, including consulting, and project management representation throughout the construction of buildings, and expert reports and testimony for arbitrations and court hearings. [Mr. Link] works for owners, contractors, and counsel. His projects include commercial, industrial, institutional, governmental, and residential construction.
>
> [Karden] was originally hired by [D'Amico's] former law firm for its lawsuit against a contractor. Mr. Link testified that he first met [D'Amico] in January 2007 at [D'Amico's] home. Osmer Deming, Esquire, gave the necessary contact information to both parties. [D'Amico] needed [Karden's] services for a new home which he was building. The meeting took several hours, and afterwards Mr. Link went to the job site. Mr. Link testified that during the meeting he had discussed his costs as an expert witness. He had said that the expenses would probably be $15,000.00 or possibly $20,000.00.
>
> Mr. Link further testified that his contracts are typically verbal because the clients can hire or fire him at any time. In

the instant case, he did a site assessment to determine what was done and if [the construction] was in conformance with codes. He gave the information to [D'Amico's] former attorneys to prepare a complaint against [D'Amico's] contractor and home inspector and to execute a certificate of merit. Mr. Link also stated that he communicated regularly with [D'Amico] via e-mails and telephone conversations. Mr. Link claimed that his work for [D'Amico] evolved into a considerable amount of construction management. [D'Amico] also asked him about designs.

By letter dated July 25, 2008 . . ., plaintiff attached a [$3,000.00] retainer invoice with the fee schedule discussed between the parties in January 2007. Mr. Link testified that he had sent this letter because he had been informed by [D'Amico's] law firm that [D'Amico] had not been paying it for its services to [D'Amico]. There is no place on the letter for [D'Amico] to sign and return it to [Karden]. The first page of the letter states: "Note: A retainer is required on every engagement. The retainer is applied to the final billing and any balance is returned at the conclusion of the engagement." [Karden] did not receive any payments from [D'Amico] after the letter had been sent to him.

In January 2009 or February 2009, at the conclusion of its services, [Karden] sent its first invoice to [D'Amico]. Mr. Link testified that he usually does not receive any payment until there is a negotiated settlement or a trial verdict. He normally expects to be paid from the settlement. He does not usually bill clients unless they request bills because he does not want them to be forced to accept an undesirable settlement in order to pay [Karden's] bill. [D'Amico's] case is still pending. Mr. Link does not think [D'Amico] terminated his services officially, but, at some point, [D'Amico] stopped asking [Karden] to work for him.

Osmer Deming, Esquire, is [D'Amico's] present attorney for his construction litigation. He had been an associate at the law firm which initiated [D'Amico's] lawsuit. He started his own practice, and [D'Amico] is now his client. Attorney Deming testified that there had been no agreement by his former law firm to pay [Karden] for his work for [D'Amico]. He did not remember getting any bill from [Karden].

[D'Amico] testified that his attorneys at the law firm, Kevin Moore, Esquire, and Eden Bucher, Esquire, facilitated the meeting between him and Mr. Link. He did not know anything about Mr. Link before the meeting. When he had received the invoice, he had not believed that he had owed [Karden] any money because he had not entered into a written or verbal contract with [Karden]. It was his understanding that Mr. Moore and Ms. Bucher were paying [Karden].

Defendant further testified that no meeting between Mr. Link and him had ever occurred at his residence. He first met

Mr. Link at the law firm. There had been no discussion regarding [Karden's] payment or a request for a retainer at that meeting. Following the first meeting, it had been [D'Amico's] understanding that Mr. Link would offer support as an expert witness for the purpose of the litigation against [D'Amico's] contractor and the inspector. Mr. Moore, Ms. Bucher, and Mr. Deming instructed [D'Amico] to work with [Karden] so he could help in the litigation concerning the house construction.

Upon receipt of the letter of February 5, 2009, [D'Amico] sent an e-mail to [Karden] stating that it was his understanding that [Karden] was being paid by the law firm and, at the current time, [D'Amico] did not wish to hire [Karden] personally. Mr. Moore and Ms. Bucher had told [D'Amico] that [Karden] had been on retainer. Mr. Link had met with the two attorneys and had talked to them by telephone about three or four times prior to [D'Amico's] first meeting with Mr. Link. The litigation against the contractor and home inspector is still pending.

Trial Court Opinion, 9/11/15, at 2-5. Based on the forgoing evidence, and finding D'Amico's testimony credible, the trial court returned a verdict in favor of D'Amico and against Karden on all counts. Karden filed a motion for post-trial relief, seeking JNOV. The trial court denied the motion and entered judgment in favor of D'Amico. Appellant timely appealed to this Court.

On appeal, Appellant essentially raises two issues for our review:

1. Did the court err in returning a verdict in favor of the [D'Amico] where the competent evidence of record established that there was an oral contract between the [Karden] and [D'Amico] for professional services and that [D'Amico] breached said contract in failing to pay [Karden] for said services?

2. Did the court err in returning a verdict in favor of [D'Amico] where the competent evidence of record established that [D'Amico] was aware of the services provided by [Karden] and in fact requested that said services be performed on his behalf and accepted the benefit of said services permitted and in failing to pay [Karden] for the value of said services, was unjustly enriched?

Karden's Brief at 4.[1]

Our standard of review of a trial court's denial of a motion for JNOV is as follows:

> Whether, when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict. Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. Absent an abuse of discretion, the trial court's determination will not be disturbed.

*Ferrer v. Trustees of University of Pennsylvania*, 825 A.2d 591, 595 (Pa. 2002) (internal citations omitted). Furthermore, there are two bases upon which the court can grant JNOV:

> One, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Drake Mfg. Co. v. Polyflow, Inc.*, 109 A.3d 250, 258 (Pa. Super. 2015) (citation omitted).

With the foregoing standard in mind, we address Karden's contention that the trial court erred concluding that D'Amico did not have an oral

---

[1] We decline to address Karden's argument that the trial court erred in failing to determine the value of services provided by Karden. Here, as more fully explained below, the trial court's conclusion that no contract existed between the parties and that D'Amico was not unjustly enriched obviated the need to determine the value of services provided by Karden.

agreement with Karden for the provision of professional services relating to a residential construction project.

It is settled that the plaintiff bears the burden of proving by a preponderance of the evidence the existence of a contract. *Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511, 516 (Pa. Super. 1995). To establish the existence of an enforceable contract, the plaintiff must satisfy all essential elements of a contract. *Id.* They include whether both parties manifested an intent to be bound by the terms of the agreement, whether the terms are sufficiently definite, and whether consideration existed. *Id.* However, as we explained in *GMH Associates Inc. v. Prudential Realty Group*, 752 A.2d 889 (Pa. Super. 2000):

> In the case of a disputed oral contract, what was said and done by the parties as well as what was intended by what was said and done by them are questions of fact. This [C]ourt is bound by the trial court's findings of fact, unless those findings are not based on competent evidence. Absent an abuse of discretion, we are bound by the trial court's assessment of the credibility of the parties and witnesses.

*GMH Associates Inc.*, 752 A.2d at 898 (citation omitted).

Instantly, based on our review of the entire record and the trial court's undisputed factual findings and credibility determinations, we may not disturb the trial court's conclusion that no oral agreement for professional services existed between the parties. As the trial court reasoned:

> [Mr. Link] is an expert who was hired by the law firm for its lawsuit against a contractor, and [D'Amico] was the law firm's client. The law firm needed an expert in order to file an action against [D'Amico's] contractor and home inspector. Mr. Link's first meeting was with [D'Amico's] attorneys, not with [D'Amico]. [The trial court] believes that [D'Amico] met Mr. Link for the first time at the law firm and not at [D'Amico's] house. The parties

- 6 -

agree that they did not know each other until [D'Amico's] attorneys introduced them to each other.

[D'Amico] testified that he did not hire [Karden] and thought that his attorneys did so. [D'Amico] did not receive any written memorialization of the oral agreement. He received from [Karden] the first written document 18 months after January 4, 2007, the date [Karden] alleges an oral agreement was entered by the parties. This letter was not answered or responded to by [D'Amico].

The next written communication from [Karden] was sent six months later. When the [D'Amico] received this invoice from [Karden] in February 2009, [he] immediately sent an email to [Karden], informing it that he did not wish to hire it personally. Thus, [D'Amico] did not think that [Karden] had already been in his employ.

Trial Court Opinion, 9/11/15, at 7. Accordingly, Karden's first issue merits no relief.

We now turn to Karden's second issue that the trial court erred in concluding that D'Amico was not subject to a claim of unjust enrichment.

Unjust enrichment is an equitable doctrine, whose elements we have described as "[(1)] benefits conferred on defendant by plaintiff, [(2)] appreciation of such benefits by defendant, and [(3)] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. 1995), *appeal denied*, 676 A.2d 1200 (Pa. 1996). The critical inquiry in the application of this doctrine is whether a defendant has been unjustly enriched. *Id.* "Where unjust enrichment is found, the law implies a contract, referred to as either a *quasi contract* or a contract implied in law, which requires that the defendant pay to plaintiff the value of the benefit conferred." *Id.* at 328-29.

"To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain." ***Torchia v. Torchia***, 499 A.2d 581, 582 (Pa. Super. 1985) (quotation marks and citation omitted). It is settled that we look to the equitable remedy of q*uantum meruit* "to provide restitution for unjust enrichment in the amount of the **reasonable value of services**." **Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.**, 2 A.3d 526, 532 n.8 (Pa. 2010) (emphasis added) (citing Black's Law Dictionary (8th ed. 2004)); ***see Schenck***, 666 A.2d 329 (noting that a defendant must make restitution to plaintiff in *quantum meruit*).

Here, the trial court declined to find that D'Amico unjustly enriched himself by appreciating and retaining the benefit of Karden's professional services. In so doing, the trial court stated:

> It is true that [D'Amico] was aware of [Karden's] services. It is not true, however, that [D'Amico] requested that those services be performed and accepted the benefit of those services. [D'Amico's] attorneys needed the services to pursue the litigation. It was [D'Amico's] attorneys who therefore requested the services. . . .
>
> [D'Amico] has not received the benefit of [Karden's] services; his case is still pending. Furthermore, the evidence showed that no expert reports were rendered by [Karden].

Trial Court Opinion, 9/11/15, at 8. The trial court is only partly correct. Here, our review of the record lends support to the trial court's conclusion that D'Amico was not unjustly enriched from Karden's provision of litigation

support services.[2]  As the trial court noted, the lawsuit for which D'Amico's former law firm engaged the expert services of Karden is still pending.

Nonetheless, the trial court erred to the extent it declined to find that D'Amico unjustly enriched himself by appreciating, accepting and retaining the benefit of construction management services.  At trial, Mr. Link testified:

> Q. And over what period of time did you provide services for Mr. D'Amico?
>
> A. About 23 months, from January of 2007 through early December of 2008.
>
>  . . . .
>
> Q. During that period of time, did Mr. D'Amico contact you about things he wanted you to do related to that project?
>
> A. Yes, frequently.  My initial – my initial scope was to participate as an expert and to provide support in the litigation process.  But subsequently, it – a considerable amount of work was done in the area of construction management.
>
> Q. And what type of things would Mr. D'Amico ask you to do?
>
> A. For the construction management purposes?  Frequently, [D'Amico] would ask me questions about designs that were done, whether they were appropriate or not, whether there was alternatives to it.  Early – when – because it's problems with the builder.  We discussed going out and getting additional estimates so that we had support for damages that were going to go into the – into the legal process.  And so a lot of activity associated with construction management was involved.
>
> Q. What about after litigation had started, were you in touch with him after that?
>
> A. After litigation?
>
> Q. Yes.
>
> A. Well, when you say after litigation –
>
> Q. After the complaint had been filed?

---

[2] At trial, Karden failed to establish whether D'Amico benefitted from the provision of litigation support services because Karden was focused almost exclusively on proving breach of contract.

A. Oh, yes.  And that was – that was both from the standpoint – a local standpoint, dispute resolution standpoint, and also standpoint of construction management.

N.T. Trial, 6/30/15, at 9-10.[3]   Given the uncontradicted evidence, D'Amico clearly appreciated, accepted and retained the benefit of Karden's expertise in managing the construction of D'Amico's dwelling.  Differently put, D'Amico unjustly enriched himself from the provision of construction management services.  As a result, we remand this matter to the trial court to determine the reasonable value of Karden's construction management services.  *See* ***Jerry's Sport Ctr., Inc.***, *supra*.   Accordingly, we affirm the trial court's judgment to the extent it held that no agreement existed between the parties and D'Amico did not benefit from the litigation support services.  We, however, reverse the trial court's judgment to the extent it held that D'Amico was not unjustly enriched from the provision of construction management services and remand this matter for determination of the reasonable value of such services.

Judgment affirmed in part, and reversed in part.  Case remanded to trial court for further proceedings.  Jurisdiction relinquished.

_____

[3] At trial, Exhibit P-2, introduced by Karden, was admitted into evidence, detailing services performed by Karden both in the context of litigation support and construction management.  As explained *infra*, on remand, the parties and the trial court will need to analyze the exhibit to determine the reasonable value of Karden's construction management services.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/25/2016