# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shane McGuire on behalf of    :
Colby Neidig,    :
              Appellant    :
   :
   :
       v.    :
   :   No. 141 C.D. 2020
City of Pittsburgh    :   Argued: February 9, 2021


BEFORE:     HONORABLE ANNE E. COVEY, Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE J. ANDREW CROMPTON, Judge


OPINION BY
JUDGE COVEY                            FILED: March 10, 2021


Shane McGuire (McGuire), on behalf of Colby Neidig (Neidig), appeals from the Allegheny County Common Pleas Court's (trial court) January 3, 2020 order denying McGuire's Motion for Post-Trial Relief. There are six issues before this Court:[1] (1) whether the City of Pittsburgh (City) waived its argument that McGuire lacks standing; (2) if the City did not waive the standing issue, whether McGuire has standing; (3) whether a federal judicial determination that Neidig injured McGuire while acting under color of state law collaterally estopped the trial court from concluding that Neidig was not acting within the scope of his duties as a City police officer, which precluded indemnification; (4) whether the trial court erred when it precluded witness testimony, intervened in witness examination, and permitted the City to publish photographs of McGuire's injuries to the jury; (5) whether the trial court improperly instructed the jury regarding the law governing course and scope of employment; and (6) whether the trial court erred by denying indemnification where there had been no federal judicial determination that Neidig

---

[1] This Court has reordered and summarized McGuire's issues for clarity.

committed willful misconduct, and permitting the City to present evidence and argument that Neidig engaged in willful misconduct. After review, this Court affirms.

On November 2, 2012, 16-year-old McGuire and a group of teenagers vandalized residences in McGuire's neighborhood. McGuire and his friends went to Neidig's home, smashed pumpkins and stacked bricks in an area close to the front door. Neidig, his wife and child arrived home while McGuire and his friends were still at the property. While the Neidigs took groceries into their house, McGuire and his friends observed the Neidigs' reaction to the vandalism. Thereafter, McGuire banged on the Neidigs' front door and then attempted to flee, but stumbled and fell over the stacked bricks. Upon hearing the banging, Neidig's wife screamed and Neidig observed McGuire trying to flee. Neidig gave chase and ultimately caught McGuire approximately one-half mile away, at which time Neidig knocked McGuire down and punched him in the face. At that time, Neidig was not wearing his police uniform and he did not identify himself to McGuire as a police officer. Neidig called 911 and restrained McGuire until City police officer David Blatt (Officer Blatt) arrived.

On November 7, 2014, McGuire filed an action in federal district court[2] (Federal Court Action) against Neidig in his individual capacity as a police officer, Officer Blatt, and the City, asserting counts of, *inter alia*, use of excessive force in violation of Section 1983 of the United States Code, 42 U.S.C. § 1983 (Section 1983), and state law assault and battery claims. On November 3, 2016, the federal district court granted summary judgment in Officer Blatt's and the City's favor, and dismissed them from the case. On March 2, 2017, after a jury trial, judgment was entered in McGuire's favor and against Neidig, finding a violation of McGuire's

---

[2] *McGuire v. Neidig* (W.D. Pa. No. 2:14-cv-01531).

2

constitutional rights under Section 1983 and awarding McGuire damages for assault and battery. The jury specifically concluded that Neidig acted under color of state law when he injured McGuire. The jury awarded $75,000.00 in damages for economic loss, physical and/or emotional pain, suffering, inconvenience, mental anguish or loss of enjoyment of life. The jury also awarded $50,093.21 in compensatory damages. The awards were molded into one award of $75,000.00 on the civil rights violation. The federal district court awarded McGuire attorney's fees in the amount of $160,575.00, and molded the total award to $235,575.00.

On June 12, 2017, Neidig assigned to McGuire "his entire right to bring legal action against the [City] for indemnity under the Political Subdivision Tort Claims Act, [42 Pa.C.S. §§ 8541-8542 (Tort Claims Act),] or under any other theory, for the [City's] failure to indemnify [Neidig] from the judgment entered against him in [the Federal Court Action.]" Reproduced Record (R.R.) at 11a.

On July 7, 2017, McGuire filed the instant action for declaratory judgment in the trial court, alleging that the City failed to comply with its statutory obligations under the Tort Claims Act to indemnify Neidig following the federal district court's award. On November 21, 2017, McGuire filed a summary judgment motion, arguing that the federal jury specifically and affirmatively answered that Neidig was acting under color of state law at the time he assaulted McGuire, and, thus, the City was obligated to pay the federal jury award. On March 8, 2018, the trial court denied McGuire's motion. The trial court held a jury trial from August 12, 2019 to August 15, 2019, at the conclusion of which the jury found in the City's favor and against McGuire, concluding that Neidig had not acted within the scope of his duties when he struck McGuire. The jury did not reach a decision on the City's alternative argument that, had Neidig been acting in the scope of his employment, his conduct would have amounted to willful misconduct, and the City would have no duty to indemnify him. McGuire and the City filed motions for post-

3

trial relief.  On January 3, 2020, the trial court issued its Memorandum Opinion and Order denying the post-trial motions (Trial Court Opinion).

McGuire appealed to this Court on February 3, 2020.[3]  On May 21, 2020, the trial court issued its Amended Statement in Lieu of Opinion, wherein it adopted its January 3, 2020 Trial Court Opinion.  On August 28, 2020, McGuire filed his brief with this Court.  On November 20, 2020, the City filed its brief with this Court, arguing, *inter alia*, that McGuire lacks standing to pursue indemnification because he is not a municipal employee with rights under the Tort Claims Act.  On December 16, 2020, McGuire filed an Application for Motion to Strike Portions of Appellee's Brief (Application to Strike), alleging therein that the City had waived its argument that McGuire lacked standing.  On December 22, 2020, McGuire filed his reply brief.  On December 30, 2020, the City filed its Answer to the Application to Strike.  On January 4, 2021, this Court directed the Application to Strike to be decided with the merits of McGuire's appeal.

## I.     Application to Strike

This Court first addresses McGuire's Application to Strike, wherein McGuire contends that the City waived its argument that he lacks standing, and, thus, that portion of the City's brief should be stricken.

McGuire contends:

> Prior to asserting the 'lack of standing' argument in [the City's] Brief, [the City] did not assert 'lack of standing' as an affirmative defense to [McGuire's] claims; such defense was not raised in [the City's] answer and new matter to [McGuire's] complaint for declaratory

---

[3] "This Court's standard of review of a trial court's denial of a motion for post-trial relief is limited to a determination of whether the trial court abused its discretion or committed an error of law." *Irey v. Dep't of Transp.*, 72 A.3d 762, 770 n.8 (Pa. Cmwlth. 2013).

judgment; (R.[R. at] 0087a-[]0095a); lack of standing was not raised by [the City] in response to [McGuire's] motion for summary judgment ([Pennsylvania Rule of Appellate Procedure (Rule)] 123 App[.] 1-34); the City . . . did not assert lack of standing in its Pretrial Statement (R.[R. at] 0110a-[]0120a), or [in] its Amended Pretrial Statement ([]R.[R. at] 0129a-[]0139a).

Application to Strike at 2.

"A defendant timely objects to a plaintiff's lack of capacity to sue if the defendant raises this issue in preliminary objections or in its answer to the complaint." *Drake Mfg. Co., Inc. v. Polyflow, Inc.*, 109 A.3d 250, 257 (Pa. Super. 2015) (emphasis omitted). The City did not file preliminary objections or raise the issue of McGuire's standing in new matter in its answer to McGuire's complaint. However, notwithstanding McGuire's assertion to the contrary, the record reflects that the City **did** raise the issue of McGuire's standing before the trial court. On August 12, 2019, the first day of trial, the City filed with the trial court a Trial Memorandum on Invalid, Ineffective Assignment of Indemnification Rights Pursuant to the Political Subdivision Tort Claims Act (Trial Memorandum). *See* Original Record (O.R.), Item No. 48.

> In the Trial Memorandum, the City asserted:
>
> By attempting to assign his right to have his conduct reviewed in accordance with [the Tort Claims Act's] standards, Neidig has removed himself from this dispute.
>
> Neidig no longer has skin in this game. Instead, he and McGuire have agreed for McGuire to face the jury with the request that tax[]payer dollars pay for McGuire's injuries. While the Court consistently upholds public employee rights to indemnification, . . . nothing in the express language of the [Tort Claims Act] supports reading into it a right for [] Neidig to assign his personal indemnification rights bestowed upon him by the Legislature. . . .
>
> . . . .

5

> **In order to have standing to pursue this indemnification claim against the City**, **McGuire**, **as a non-employee**, **would need to be able to receive a valid**, **effective assignment**. However, even if the possibility of assignment of [Tort Claims Act] indemnification rights could be entertained, it would offend the public policy of this Commonwealth. Entertaining a non-employee's pursuit of indemnification would be prejudicial to tax[]payer interests.

Trial Memorandum at 4-5, O.R. Item No. 48 (emphasis added; citation and footnotes omitted).

Further, on August 14, 2019, during the trial, the City moved for compulsory nonsuit (Nonsuit Motion), arguing:

> Your Honor, there are essentially two issues that the City presents in its [N]onsuit [Motion]. **The first is regarding an assignment and the lack of standing on behalf of [McGuire] to bring this action**. Standing is a preliminary matter that must be proven in order to have a right to present [McGuire's] case[-]in[-]chief here today. [McGuire has] failed to present evidence of an assignment of the right of indemnification from [Neidig] to [McGuire] which would substantiate [McGuire's] right to bring this action for indemnity on [] Neidig's behalf. Therefore, [] McGuire lacks standing to bring this action . . . ab initio.
>
> To the extent that there is an assignment, Your Honor, the City contends that that assignment is void ab initio. The right to indemnification under the [Tort Claims Act] is a right that is granted solely to employees of local agencies.
>
> . . . .
>
> Because [McGuire] is not a [City] employee, he cannot be assigned the right of [Neidig] to bring this action.

R.R. at 1103a-1104a (emphasis added).[4,5]

---

[4] The trial court denied the Nonsuit Motion. *See* R.R. at 1110a.

[5] The City raised the issue again in its post-trial motion.

6

Importantly, in response, McGuire's counsel did **not** argue waiver, but instead asserted: "Regarding evidence of assignment, there was testimony -- I believe it was elicited from the [City] -- that the claim was, in fact, [as]signed; the claim for indemnification was, in fact, [as]signed from [Neidig] to [McGuire]." *Id.* at 1109a.

The law is well-established that

> [w]hile a party has a duty to preserve an issue at every stage of a proceeding, he or she also must comply with the general rule to raise an issue at the earliest opportunity. *Renna v. Dep't of Transp., Bureau of Driver Licensing*, 762 A.2d 785, 788 (Pa. Cmwlth. 2000) (holding failure to raise issue during trial court's hearing constituted waiver).
>
> *Campbell v. Dep't of Transp., Bureau of Driver Licensing*, 86 A.3d 344, 349 (Pa. Cmwlth. 2014) (emphasis added)[.]

*City of Phila. v. Rivera*, 171 A.3d 1, 6 (Pa. Cmwlth. 2017) (emphasis omitted). Further, '[Pennsylvania Rule of Appellate Procedure] 302(a) provides: 'Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.'' *In re RHA Pa. Nursing Homes Health & Rehab. Residence*, 747 A.2d 1257, 1260 (Pa. Cmwlth. 2000).

*In Re Petition to Set Aside Upset Tax Sale*, 218 A.3d 995, 998 (Pa. Cmwlth. 2019). Because McGuire did not argue to the trial court that the City's failure to raise the standing issue in preliminary objections or new matter constituted waiver, McGuire waived that issue and may not now argue it before this Court.

McGuire also asserts that "[the City's] 'lack of standing' argument does not appear in either [McGuire's] statement of issues and/or the [City's] counterstatement of those issues." Application to Strike at 1.

Rule 2112 provides, in relevant part:

> **The brief of the appellee**, except as otherwise prescribed by these rules, **need contain only a summary of argument and the complete argument for appellee**, and may also include counter-statements of any of the matters required in the appellant's brief as stated in [Rule] 2111(a). Unless the appellee does so, or the brief of the appellee otherwise challenges the matters set forth in the appellant's brief, it will be assumed the appellee is satisfied with them, or with such parts of them as remain unchallenged.

Pa.R.A.P. 2112 (emphasis added). Accordingly, unlike an appellant, as the prevailing party, the City was not required to include in its brief a counterstatement of issues, and was permitted to address the issue in the body of its brief.

Further, the City did not waive the issue by failing to file a cross-appeal. The Pennsylvania Supreme Court has explained:

> [Rule] 501 provides, 'any party who is aggrieved by an appealable order . . . <u>may</u> appeal therefrom.' Pa.R.A.P. 501 (emphasis added). The Note to Rule 511 further states, 'An appellee should not be required to file a cross[-]appeal because the [c]ourt below ruled against it on an issue, as long as the judgment granted appellee the relief it sought.' [Rule] 511 note (citation omitted). 'Pennsylvania case law also recognizes that a party adversely affected by earlier rulings in a case is <u>not required</u> to file a protective cross-appeal if that same party ultimately wins a judgment in its favor; the winner is not an 'aggrieved party.'' *Basile v. H & R Block, Inc.*, 973 A.2d 417, 421 (Pa. 2009) (citation omitted) (emphasis in original). Moreover, several Justices of this Court have gone a step further and suggested such appeals should not be permitted. *See id.*[] at 424 (Saylor, J., concurring) (footnote omitted) (asserting '[protective] cross-appeals generally should not be permitted' given that 'the collective burden of screening and addressing such cross-appeals may outweigh the benefits from the opportunity for an appellate court to advance the resolution of the litigation in individual cases'); *id.*[] at 426-27 (Baer, J., concurring) (writing 'separately to second Justice Saylor's

8

inclinations to deem protective cross-appeals impermissible' because 'refusing to hear [them] will streamline cases on appeal and prevent prevailing parties from deluging the courts with unnecessary protective cross-appeals[,]' and noting such practice would 'eliminate[] the question of whether a non-aggrieved party filing a protective cross-appeal must raise every potential appealable issue for fear of waiver').

*Lebanon Valley Farmers Bank v. Commonwealth*, 83 A.3d 107, 112 (Pa. 2013).

Here, as the prevailing party, the City was not required to file a cross-appeal. For these reasons, the Application to Strike is denied.


## II. Standing

Having concluded that the City did not waive its argument challenging McGuire's standing, this Court now addresses the standing issue on its merits.

Initially,

[i]n Pennsylvania, the doctrine of standing . . . is a prudential, judicially created principle designed to winnow out litigants who [sic] have no direct interest in a judicial matter. For standing to exist, the underlying controversy must be real and concrete, such that the party initiating the legal action has, in fact, been 'aggrieved.' *Pittsburgh Palisades Park, LLC v. Commonwealth*, . . . 888 A.2d 655, 659 ([Pa.] 2005). As this Court explained in *William Penn Parking Garage*[*, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975)], 'the core concept [of standing] is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution to his challenge.' [*William Penn*,] 346 A.2d at 280-81. A party is aggrieved for purposes of establishing standing when the party has a 'substantial, direct and immediate interest' in the outcome of litigation. *Johnson*[ *v. Am. Standard*, 8 A.3d 318,] 329 [(Pa. 2010)] (quoting *Fumo v. City of Phila*[.], . . . 972 A.2d 487, 496 ([Pa.] 2009)). A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; it is direct when the asserted violation shares a

causal connection with the alleged harm; finally, a party's interest is immediate when the causal connection with the alleged harm is neither remote nor speculative. *Id.*

Thus, while the purpose of the Declaratory Judgment[s] Act, 42 Pa.C.S. §[§] 7531[-7541], is to 'settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered,' the availability of declaratory relief is limited by certain justiciability concerns. 42 Pa.C.S. § 7541(a). In order to sustain an action under the Declaratory Judgment[s] Act, a plaintiff must allege an interest which is direct, substantial and immediate, and must demonstrate the existence of a real or actual controversy, as the courts of this Commonwealth are generally proscribed from rendering decisions in the abstract or issuing purely advisory opinions.

*Off. of Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014) (citation omitted).

Here, the City asserts that McGuire lacks standing because nothing in the Tort Claims Act *authorized* Neidig to assign his indemnification rights to McGuire, and, thus, the assignment is invalid. McGuire retorts that nothing in the Tort Claims Act *prohibited* Neidig from assigning to McGuire his indemnification rights thereunder and, as assignee, McGuire is directly aggrieved by the City's failure to indemnify.

Section 8548(a) of the Tort Claims Act provides:

When an action is brought against an employee of a local agency for damages on account of an injury to a person or property, and he has given timely prior written notice to the local agency, and it is judicially determined that an act of the employee caused the injury and such act was, or that the employee in good faith reasonably believed that such act was, within the scope of his office or duties, the local agency shall indemnify the employee for the payment of any judgment on the suit.

42 Pa.C.S. § 8548(a). Nothing in the Tort Claims Act expressly prohibits, authorizes or addresses the assignment of an employee's indemnification right thereunder.

10

The City acknowledges that "[n]either published nor unpublished decisions in the Commonwealth address the propriety of a public employee assigning his/her indemnification rights." City Br. at 13-14 (footnote omitted). Notwithstanding, a factually similar federal district court case provides some insight.[6] In *Best v. Keenan* (E.D. Pa. No. 03-5651, filed October 14, 2004), 2004 U.S. Dist. LEXIS 27000 (*Best I*), the plaintiff filed a complaint against the City of Philadelphia (Philadelphia) and several police officers alleging excessive force. Specifically, the plaintiff similarly alleged a violation of Section 1983 and state law assault and battery claims. After Philadelphia and several police officers were dismissed from the action, the jury returned a verdict against the sole remaining police officer defendant (Officer Keenan). Philadelphia refused to pay any judgment on Officer Keenan's behalf. Thereafter, the plaintiff moved to compel Philadelphia to indemnify Officer Keenan and pay the judgment and attorney's fees on Officer Keenan's behalf.

The *Best I* Court reasoned:

Nothing in [the] Tort Claims Act suggests that a plaintiff in an underlying cause of action may directly seek indemnification from the defendant's employer. The Pennsylvania Supreme Court has held that the purpose of the indemnification provisions '. . . is to permit local agency employees to perform their 'official duties' without fear of personal liability, whether pursuant to state or federal law, so long as the conduct is performed during the course of their employment.' *Wiehagen* [*v. Borough of N. Braddock*], . . . 594 A.2d 303, 306 (Pa. 1991). Such language is indicative of the statutory intent to protect the employee, not the injured plaintiffs. Indeed, at least two courts from this Circuit have held that the Tort Claims Act 'is not meant to provide a cause of action for a plaintiff in an underlying action.' *Johnson v. City of Erie, Pa.*, 834 F.

---

[6] Although federal district court decisions are not binding, they may be cited as persuasive authority. *Mannella ex rel. Mannella v. Port Auth. of Allegheny Cnty.*, 982 A.2d 130 (Pa. Cmwlth. 2009).

11

Supp. 873, 877 (W.D. Pa. 1993); *see also Talley by Talley v. Trautman*[ (E.D. Pa. No. 96-5190, filed March 13, 1997), 1997 U.S. Dist. 3279, at *17-18] ('It does not follow, however, [] that a governmental agency may have to indemnify one of its employees for intentional torts committed in the course of his duties to that the governmental agency therefore becomes directly liable to the plaintiff under the doctrine of *respondeat superior* under a different section of the Act.'). In turn, our research has not revealed, and plaintiff has not cited, any case allowing a plaintiff in an underlying cause of action to pursue an indemnification action under [Section 8548 of the Tort Claims Act].

In light of this jurisprudence, it remains abundantly clear that plaintiff does not have any legal entitlement to compel [Philadelphia] to satisfy the judgment against Officer Keenan. [Philadelphia] was dismissed as a defendant from the lawsuit. Thereafter, the trial proceeded only against individual officers, with Officer Keenan remaining as the sole defendant by the time the case went to the jury for deliberations. The jury reached a verdict against Officer Keenan for acts committed in the scope of his duties as a police officer and this Court entered a judgment against him for compensatory damages, punitive damages and plaintiff's attorney's fees and costs. Individually, he remains responsible for this judgment. **While the officer is now entitled to bring an indemnification action** against his employer under the Tort Claims Act, **plaintiff has no standing to pursue such a claim**.

*Best I*, 2004 U.S. Dist. LEXIS 27000, at *5-6 (emphasis added; footnotes omitted).

Thereafter, Officer Keenan assigned to the plaintiff all monies due Officer Keenan from Philadelphia under the Tort Claims Act. The plaintiff then renewed his motion to compel Philadelphia to pay the judgment and attorney's fees. In a subsequent decision, the Court explained:

Armed with assignment of rights from Officer Keenan, plaintiff, in the case at bar, now seeks to compel [Philadelphia] to indemnify Officer Keenan, under [Section 8548 of the Tort Claims Act], for the amount of the judgment, plus attorney'[s] fees and costs, rendered

12

against him in the above-captioned action. 'It is clear that an action under the Tort Claims Act, which mandates specific procedures for indemnification by municipalities for judgments rendered against public employees, is the proper recourse for a public employee faced with such judgment when the public body is not named in the suit.' *Retenauer v. Flaherty*, . . . 642 A.2d 587, 594 (Pa. C[mwlth]. 1994)[.]

*Best v. Keenan* (E.D. Pa. No. 03-5651, filed March 12, 2005), 2005 U.S. Dist. LEXIS 3960, at *5-6 (*Best II*). The *Best II* Court concluded:

Such an action, however, lacks the required legal and factual interdependence necessary for this Court to invoke its ancillary jurisdiction. The underlying action proceeded under a [Section] 1983 claim of excessive force, with the Court exercising its supplemental jurisdiction over the state law claims of assault and battery. *See* [Section 1367 of the United States Code,] 28 U.S.C. § 1367. Although [] Philadelphia was originally a party to the action and defended Officer Keenan throughout the course of this matter, it had been voluntarily dismissed as a party prior to the start of trial. The Court thereafter entered judgment against only Officer Keenan. The motion now pursued by plaintiff is not simply an effort to collect on that judgment, but rather an attempt to establish liability, under state law, on the part of [] Philadelphia. This determination turns on an interpretation of the indemnification provision of the state Tort Claims Act - a theory of liability not present in the initial action.

Accordingly, plaintiff now has several options available to him. He may move in this Court, under the Federal Rules of Civil Procedure, to enforce the judgment against Officer Keenan, without concern for [Philadelphia's] liability. **Alternatively**, **he may use the assignment of rights given to him by Officer Keenan and bring a state court action**, **under** [**Section 8548 of the Tort Claims Act**], **against** [] **Philadelphia**. Under well-established federal jurisprudence, [] he may not, however, pursue indemnification from [Philadelphia] in federal court.

13

*Best II*, 2005 U.S. Dist. LEXIS 3960, at \*7-8 (emphasis added). Thus, the plaintiff was afforded the opportunity to pursue a state court action.[7]

Here, the City argues that exceptions to governmental immunity set forth in the Tort Claims Act are strictly construed and, since the Tort Claims Act permits indemnification for municipal employees, a non-employee may not seek indemnification. It further maintains that Section 8548(a) of the Tort Claims Act's plain language clearly provides that only a local agency employee may seek indemnification thereunder. Thus, consistent with the interpretation in *Best I*, the federal district court found that the plaintiff did not have any legal entitlement to require Philadelphia to satisfy the judgment against Officer Keenan. Notwithstanding the City's argument, "[w]here an assignment is effective, **the assignee stands in the shoes of the assignor and assumes all of his rights**." *Smith v. Cumberland Grp., Ltd.*, 687 A.2d 1167, 1172 (Pa. Super. 1997) (emphasis added). There is nothing in the Tort Claims Act prohibiting an assignment of rights. Accordingly, when the plaintiff acquired an assignment of rights from Officer Keenan, the *Best II* Court acknowledged the plaintiff's right to pursue indemnification, since, having acquired an assignment, the plaintiff was merely exercising Officer Keenan's rights to indemnification as a local agency employee.

In the instant matter, McGuire obtained a judgment against Neidig for conduct that occurred while Neidig acted under color of state law. Neidig thereafter

---

[7] Despite the federal court's description of the assignment of rights granted to Best, **Officer Keenan** sought indemnification from Philadelphia in state court. *See Keenan v. City of Phila.*, 936 A.2d 566 (Pa. Cmwlth. 2007). On appeal from the lower court's denial of indemnification, this Court described the assignment differently, explaining: "Best's attorney and [Officer] Keenan then entered into an agreement to forgive his debt to Best and assign Best's attorney any amount he received following a claim for indemnification from [Philadelphia]." *Id*. at 568 n.5. Ultimately, this Court upheld the trial court's denial of indemnification, because the federal jury found Officer Keenan had engaged in willful misconduct.

14

assigned his indemnification rights under the Tort Claims Act to McGuire in exchange for McGuire's agreement not to further seek to collect the judgment from Neidig. Permitting McGuire to pursue Neidig's indemnification rights from the City in exchange for McGuire's release of Neidig's personal liability to McGuire is consistent with the indemnification provision's purpose "to permit local agency employees to perform their official duties without fear of personal liability, whether pursuant to state or federal law, so long as the conduct is performed during the course of their employment." *Wiehagen*, 594 A.2d at 306. Standing in Neidig's shoes, McGuire is aggrieved by the City's failure to indemnify Neidig. Accordingly, because this Court concludes that McGuire has standing to pursue indemnification on Neidig's behalf, we will address the substantive issues McGuire raises on appeal.

### III. Collateral Estoppel

McGuire first contends that the Federal Court Action determination that Neidig injured McGuire while acting under color of state law collaterally estopped the City from litigating the issue of whether Neidig was acting within the scope of his office or duties as a City police officer. "Generally, collateral estoppel forecloses re-litigation of issues of fact or law in subsequent actions where" certain specific criteria are met. *Pa. Bd. of Prob. & Parole v. Pa. Hum. Rels. Comm'n*, 66 A.3d 390, 395 (Pa. Cmwlth. 2013).

> Collateral estoppel will only apply where: the issue is the same as in the prior litigation; the prior action resulted in a final judgment on the merits; the party against whom the doctrine is asserted was a party or in privity with a party to the prior action; and the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior action. In some renditions, courts add a fifth element, namely, that resolution of the issue in the prior proceeding was essential to the judgment.

*In re Coatesville Area Sch. Dist.*, ___ A.3d ___ (Pa. No. 7 MAP 2020, filed January 20, 2021), slip op. at 6 (citation omitted). "[A]ll [of the criteria] must be met[] in order to permit the doctrine of collateral estoppel to come into play." *In re Nocella*, 79 A.3d 766, 793 (Pa. Cmwlth. 2013), *aff'd*, 102 A.3d 422 (Pa. 2014).

> The Pennsylvania Supreme Court has declared:

> Section 8548 [of the Tort Claims Act] clearly and unambiguously provides that 'the local agency shall indemnify the employee for the payment of *any judgment*' in an action for injury to person or property brought against an employee where the employee was acting within the scope of his duties. [42 Pa.C.S. § 8548(a) (e]mphasis added). Clearly, this section was intended to provide for indemnification for *any* judgment that may be rendered against an employee while acting **within the scope of his employment**.

*Wiehagen*, 594 A.2d at 305 (bold emphasis added).

In *Justice v. Lombardo*, 208 A.3d 1057 (Pa. 2019), the Pennsylvania Supreme Court adopted the Restatement (Second) of Agency § 228(1) (Am. Law Inst. 1958) (Restatement) *scope of employment* definition in the context of sovereign immunity.[8] Therein, the *Justice* Court explained:

> Section 228 of the Restatement provides:

---

[8] The *Justice* Court stated:

> We have long held that whether a particular act of an employee is within the scope of his employment is ordinarily a question of fact for the jury. We have explained that the only exception to this well-established rule is where neither the facts nor the inferences to be drawn from them are in dispute. In such a case, the court may decide the scope of employment question as a matter of law. However, where more than one inference may be drawn from the facts, the issue of whether an employee was acting within the scope of employment is for the jury.

*Justice*, 208 A.3d at 1068 (citations omitted).

16

> (1) Conduct of [an employee] is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the [employer;] and
>
> (d) if force is intentionally used by the [employee] against another, the use of force is not unexpectable by the [employer].

Restatement . . . § 228(1) []. On the other hand, an employee's conduct 'is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.' *Id*., § 228(2).

Subsequent sections of the Restatement provide additional criteria for assessing whether conduct falls within the scope of employment. *See, e.g.*, *id*., §§ 229-31, 235. Section 229 [of the Restatement] provides that 'to be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to that authorized.' *Id*., § 229(1). It also enumerates ten 'matters of fact' to be considered in determining whether or not conduct, although unauthorized, is nevertheless so similar to or incidental to the conduct authorized that it is still within the scope of employment. *Id*., § 229(2). Pursuant to [S]ection 230 [of the Restatement], 'an act, although forbidden, or done in a forbidden manner, may be within the scope of employment.' *Id*., § 230. Section 231 [of the Restatement] provides that 'an act may be within the scope of employment although consciously criminal or tortious.' *Id*., § 231. Pursuant to [S]ection 235 [of the Restatement], 'an act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed.' *Id*., § 235.

*Justice*, 208 A.3d at 1067 (footnote omitted).

17

In the Federal Court Action, the jury determined that Neidig acted under color of state law. "[T]o be under color of state law, the actor must have exercised 'power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Frazier v. City of Phila.*, 756 A.2d 80, 83 (Pa. Cmwlth. 2000) (quoting *Costa v. Frye*, 588 A.2d 97, 99 (Pa. Cmwlth. 1991)).

McGuire argued to the trial court, and now argues to this Court, that since the jury's finding was equivalent to a finding that Neidig acted within the scope of his employment, the first collateral estoppel requirement was met. McGuire asserted to the trial court that this Court in *Tepper v. City of Philadelphia Board of Pensions and Retirement*, 163 A.3d 475 (Pa. Cmwlth. 2017), treated the terms *under color of state law* and *scope of employment* as the same. In *Tepper*, this Court addressed whether an off-duty police officer convicted of murdering his neighbor, and found by a federal jury to have used deadly force while acting under color of state law, had engaged in *malfeasance in office or employment* under the City of Philadelphia Public Employees Retirement Code (Retirement Code),[9] which disqualified him from pension eligibility. On appeal, the trial court affirmed the Philadelphia Board of Pensions and Retirement's (Pensions Board) decision that Tepper was collaterally estopped from asserting that he had not acted "**in [his] office or employment**" under the Retirement Code because the federal jury had found that Tepper had acted under color of state law. *Tepper*, 163 A.3d at 477 (emphasis added). On appeal, this Court concluded that "acting 'under color of state law' for purposes of Section 1983 has the same meaning as 'in office or employment' under

---

[9] "Section 22-1302(1)(a)(.5) of the Retirement Code provides that an employee shall not be entitled to retirement or other benefits or payments, except a return of the contribution paid, if he or she 'pleads or is finally found guilty . . . of . . . [m]**alfeasance in office or employment**.' Phila. Pub. Emps. Ret. Code, [Phila. Code] § 22-1302(1)(a)(.5)." *Tepper*, 163 A.3d at 477 n.1 (emphasis added).

18

the Retirement Code [], where the jury found that Tepper acted 'under color of state law' in his official capacity as a police officer." *Tepper*, 163 A.3d at 483.

In the instant matter, the trial court distinguished *Tepper*, explaining:

> In *Tepper*, the jury accepted that Tepper exited his home, ***flashed his badge, and identified himself as a police officer***.
>
> After hearing **those facts**, the jury found that Tepper acted 'under color of state law,' in his official capacity as a police officer, under the definitions of that term and the guidelines set forth in the federal jury charge. The facts presented in this case are quite distinguishable; there was never the display of a badge or the announcement as a police officer, or any other indication that Neidig was a 'state actor.' This Court finds these facts critical and determinative to the jury's finding and any comparison with *Tepper* [is] misplaced.

Trial Ct. Op. at 12-13 (citations omitted). This Court agrees, and also finds *Tepper* inapposite in that *Tepper* involved the Retirement Code, and the relevant language therein did not use the term *scope of employment*, but rather addressed "[m]alfeasance in office or employment." *Tepper*, 163 A.3d at 477 n.1 (quoting Phila. Pub. Emps. Ret. Code, § 22-1302(1)(a)(.5)).

In considering whether "the issue in the prior adjudication was identical to the one presented in the later action[,]" *Pa. Bd. of Prob. & Parole*, 66 A.3d at 395, the trial court further contrasted the meaning of the phrase, *under color of state law*, with *scope of employment* as described in *Justice*, noting:

> The United States Supreme Court has stated that acting 'under color of state law' requires that a defendant in a Section 1983 action has exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' [*West v. Atkins*,] 487 U.S. [42,] 49 [(1988)]. 'If an individual is possessed of state authority and *purports to act under that authority*, his action is state action.' *Griffin*

19

*v. State of Maryland*, 378 U.S. 130, 135 ([]1964)[] (emphasis added in original).

Trial Ct. Op. at 13. The trial court concluded:

> This writer is unwilling to accept the issue decided in the prior case as identical to the one presented in the instant. This [trial c]ourt does not find that 'under color of state law' is synonymous with 'acting within the scope of his employment[.']  This [trial c]ourt crafts jury instructions dozens of times throughout the course of every year; there has never been a time that legal counsel so freely offered to deem words or terms as synonymous or interchangeable.  This [trial c]ourt routinely argues over the placement of commas, the placement of each particular instruction; and often in negligence actions where liability is admitted, the inclusion of the definition of the term negligence.
>
> It is contrary to all of this [trial c]ourt's training and experience to patently ignore the clear language of the statutes and precedential holdings spanning nearly 100 years of jurisprudence.  It is also contrary to reason and law to apply the 'close enough' rationale that McGuire now asserts.

Trial Ct. Op. at 15.

Pennsylvania courts have not explicitly ruled on the interplay between the terms *under color of state law* and *within the scope of employment* in the context of indemnification under the Tort Claims Act.[10]  *But cf., Retenauer*.  To further examine whether the jury's finding in the Federal Court Action that Neidig acted

---

[10] McGuire argues that Section 8548 of the Tort Claims Act "was intended to provide for indemnification for *any* judgment that may be rendered against an employee while acting within the scope of his employment . . . ."  McGuire Br. at 14.  McGuire relies on *Wiehagen*, wherein the Pennsylvania Supreme Court ordered that the Borough of North Braddock must indemnify a police officer for damages awarded in a federal action for violation of Section 1983, "because there is a judgment against [the police officer] arising from conduct within the scope of his employment[.]" *Wiehagen*, 594 A.2d at 306.

Notably, the Pennsylvania Supreme Court in *Wiehagen* required indemnification because, unlike in the instant matter, the parties had explicitly stipulated in the federal court action that the police officer was acting within the scope of his duties when he struck the plaintiff.

20

*under color of state law* is equivalent to a finding that Neidig acted *within the scope of employment*, this Court looks to federal jurisprudence.

> The concepts of **acting 'under color of state law' and acting 'within the scope of employment**[,]' while comparable[,] **are not the same**. *Compare Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994) (acting under color of law . . .)[,] *with* [Restatement] § 228.

*Hickenbottom v. Nassan* (W.D. Pa. No. 03-223, filed March 29, 2007), 2007 U.S. Dist. LEXIS 24336, at *139-40 (emphasis added); *see also Davies v. Lackawanna Cnty.* (M.D. Pa. No. 3:15-cv-1183, filed March 16, 2017), 2017 U.S. Dist. LEXIS 38142; *Wash.-Pope v. City of Phila.*, 979 F. Supp. 2d 544 (E.D. Pa. 2013); *Spiker v. Allegheny Cnty. Bd. of Prob. & Parole*, 920 F. Supp. 2d 580 (W.D. Pa. 2013), *aff'd*, 553 F. App'x 275 (3d Cir. 2014) (The allegation that a probation officer acted under color of state law was not determinative with respect to whether the probation officer was acting within the scope of her employment.).

In fact, federal courts have specifically held that a "determination that [a police officer] acted 'within the scope of his office or employment' does not inevitably flow from a concession that he acted 'under color of' Pennsylvania law." *Zion v. Nassan*, 283 F.R.D. 247, 267-68 (W.D. Pa. 2012), *aff'd*, 556 F. App'x 103 (3d Cir. 2014). "The actions of a state official may 'constitute state action . . .' even when they exceed the limits of the official's authority." *Id*. at 267. The *Zion* Court noted that "[t]he Pennsylvania courts have recognized that 'an assault committed by an employee upon another person **for personal reasons** or in an outrageous manner is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment.'" *Id*. at 267 (bold emphasis added; italic emphasis omitted) (quoting *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. 1998)). Thus, in the context of federal jurisprudence, the determination in the instant Federal Court Action that Neidig acted under color of law does not

21

dictate that Neidig acted within the scope of his employment. This Court finds the aforementioned federal jurisprudence persuasive and holds that the trial court properly concluded that the City was not collaterally estopped from asserting that Neidig acted beyond the scope of his employment when he injured McGuire. Having concluded that McGuire did not meet the first collateral estoppel requirement, this Court need not address the other criteria.[11]

## IV.   Evidentiary Issues

McGuire also argues that the trial court erred when it precluded witness testimony, intervened in witness examination, and permitted the City to publish photographs of McGuire's injuries to the jury. First, McGuire asserts that the trial court improperly permitted the City to elicit opinion testimony from the City's Police Chief Scott Schubert (Chief Schubert) that Neidig was not acting as a City police officer when he injured McGuire, but prohibited McGuire from eliciting contrary opinion testimony from McGuire's witness, Fraternal Order of Police (FOP) President Robert Swartzwelder (Swartzwelder).

Initially, "[t]he decision whether to admit or exclude the testimony of a witness is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion."[12] *Daddona v. Thind*, 891 A.2d 786, 811 (Pa. Cmwlth. 2006). "An abuse of discretion 'is not merely an error of judgment, [but is a] judgment [that is] manifestly unreasonable, or the result of partiality, prejudice, bias

---

[11] Notwithstanding, McGuire did not demonstrate that it was necessary to the federal court's ruling that it make a finding that Neidig acted within the **scope of his employment** to determine that Neidig was liable under Section 1983.

[12] Further, "[t]he law is well-established that '[a] trial court is vested with wide discretion in deciding whether to allow the admission of expert testimony into evidence, and is not subject to reversal absent a clear abuse of discretion.'" *In re Condemnation of Parcel ID No. 02-033-004 v. Lands of Tarlini*, 185 A.3d 1177, 1182 (Pa. Cmwlth. 2018) (quoting *Daddona v. Thind*, 891 A.2d 786, 805 (Pa. Cmwlth. 2006)).

or ill-will, as shown by the evidence or the record . . . .'" *O'Layer McCready v. Dep't of Cmty. & Econ. Dev.*, 204 A.3d 1009, 1018 n.6 (Pa. Cmwlth. 2019) (quoting *Mielcuszny v. Rosol*, 176 A. 236, 237 (Pa. 1934)).

At trial, McGuire called Chief Schubert as on cross-examination, questioning him, *inter alia*, about City police officers' duties and inquiring whether Chief Schubert considered particular hypothetical conduct to be within the scope of such duties. *See* R.R. at 760a. On redirect examination, Chief Schubert specifically opined that Neidig was not acting within the scope of his employment when he injured McGuire. *See* R.R. at 793a-795a.

In his brief to this Court, McGuire inaccurately represents that "[t]he trial court permitted the [City] to elicit an opinion from [Chief Schubert][] that [**Neidig**] **was not acting as a** [**City**] **police officer** when he injured McGuire [and that] **McGuire objected to that opinion testimony** on the grounds that [Chief] Schubert had not been qualified as an expert, but it was overruled." McGuire Br. at 31 (emphasis added). In support, McGuire cites to Reproduced Record pages 768a to 769a. However, upon review of the cited record, it is clear that McGuire's objection was not to a question seeking to elicit an opinion from Chief Schubert pertaining to whether Neidig was acting as a police officer when he injured McGuire. Rather, McGuire's objection addressed the following hypotheticals posed by counsel.

> Chief Schubert testified:
>
> [City's Counsel:] So if a call for vandalism came in and the officer is on [his] way to the vandalism call and on the way [he] get[s] another call that a burglary is in process, would it be reasonable for that officer to divert [his] attention to the burglary?
>
> [Chief Schubert:] Absolutely. And if [he] didn't, a supervisor should be diverting [him].

23

[McGuire's Counsel]: **Objection**, **Your Honor**. **This whole line of questioning is hypotheticals**. **He hasn't been qualified as an expert to testify**, **and I just object to the relevance of asking this witness all these hypotheticals**.

THE COURT: Do you want to respond to that?

[City's Counsel]: I do have a response. He was asked a number of hypothetical questions, and he is called to talk about the scope of employment. He's also been questioned a lot on the policies, and these are hypothetical questions that relate to the policies.

[McGuire's Counsel]: He's been asked on cross, which is permissible. On direct, leading him through hypothetical questions to get to a suggested answer is impermissible.

THE COURT: I'm going to allow the question. And [McGuire's Counsel] is correct. You cannot lead.

[City's Counsel]: Thank you.

R.R. at 768a-769a (emphasis added). Thus, McGuire voiced a general objection to the City's counsel asking Chief Schubert hypotheticals. When the City's counsel asked Chief Schubert whether Neidig acted within the scope of his employment, it was clearly not a hypothetical question. The City's counsel inquired:

Q. Was [] Neidig acting within the scope of his employment, in your view, when he took whatever actions and decisions that he took on November 2, 2012?

A. Are you asking me do I think he was acting as a police officer?

Q. A Pittsburgh police officer?

A. I do not.

R.R. at 793a.[13] The City's counsel concluded questioning Chief Schubert, asking:

---

[13] McGuire's counsel did not object to this question. It was not until **after** Chief Schubert was asked to explain **why** he did not believe Neidig was acting as a police officer when he injured McGuire, and Chief Schubert had answered, that McGuire's counsel objected to **that** answer solely

24

Q. So based on the facts and circumstances, do you think **what specifically happened on November 2, 2012**, was within the scope and office of a [City] police officer?

A. I don't believe he was acting as a [City] police officer at that time.

R.R. at 795a (emphasis added). McGuire's Counsel did not object to this question. The law is well established that "'[t]o preserve an issue for appeal, **a litigant must make a timely**, **specific objection at trial** and must raise the issue [i]n post-trial motions.' Issues not preserved for appellate review cannot be considered by this Court, even if the alleged error involves 'a basic or fundamental error.'" *City of Phila. v. DY Props., LLC*, 223 A.3d 717, 722 (Pa. Cmwlth. 2019) (quoting *Mun. Auth. of the Borough of Midland v. Ohioville Borough Mun. Auth.*, 108 A.3d 132, 136-37 (Pa. Cmwlth. 2015) (original emphasis omitted)) (emphasis added).

In addition, the Pennsylvania Superior Court has explained:

Pennsylvania Rule of Evidence 701, regarding 'Opinion Testimony by Lay Witnesses' provides,

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of [Pennsylvania] Rule [of Evidence] 702.

Pa.R.E. 701. '[T]echnical expertise does not *ipso facto* convert a fact witness, who might explain how data was

---

on the basis that the issue was resolved in federal court. *See* R.R. at 794a. Chief Schubert had already answered the question, and the City's counsel continued questioning Chief Schubert without the trial court ruling on that objection.

gathered, into an expert witness, who renders an opinion based on the data[.]' *Branham v. Rohm & Haas Co.*, . . . 19 A.3d 1094, 1110 (Pa. Super. 2011). 'Fact testimony may include opinion or inferences so long as those opinions or inferences are rationally based on the witness's perceptions and helpful to a clear understanding of his or her testimony.' *Brady by Brady v. Ballay*, 704 A.2d 1076, 1082 (Pa. Super. 1997).

*Commonwealth v. T.B.*, 232 A.3d 915, 919 (Pa. Super. 2020).

Here, **McGuire** called Chief Schubert as a fact witness as on cross-examination to support McGuire's contention that Neidig acted within the scope of his employment. Chief Schubert oversees police officers' job performance and can impose discipline when police officers violate their duties. On redirect examination, Chief Schubert offered a specific opinion that Neidig had acted outside the scope of his duties when he injured McGuire. Consistent with Pennsylvania Rule of Evidence 701, Chief Schubert's opinion was rationally based on his perceptions and was helpful to the jury in determining the City's expectations of a police officer in Neidig's situation. *See* Pa.R.E. 701(a), (b). It was "not based on scientific, technical, or other specialized knowledge . . . ." Pa.R.E. 701(c). Thus, even if McGuire had timely and specifically objected to Chief Schubert's testimony, this Court would conclude that Schubert's testimony was consistent with Pennsylvania Rule of Evidence 701.

McGuire further argues that the trial court should have permitted him to present Swartzwelder's opinion testimony in response to Chief Schubert's testimony, and erroneously sustained the City's objection thereto. Importantly, **McGuire called Chief Schubert** as a fact witness as on cross-examination **and questioned him generally about the scope of police officers' duties**. On redirect examination, Chief Schubert expressed an opinion, without objection, about whether Neidig's conduct was within the scope of his duties – police officer duties that Chief Schubert regularly oversaw.

26

In contrast, McGuire also called Swartzwelder as a fact witness. McGuire's counsel explained:

> [] Swartzwelder, he's testifying in his capacity as the president of the FOP. He is intimately familiar with [City] policies and procedures. He's intimately familiar with the training that the officers receive.
>
> He's written a bunch of the training curriculum, he's been a full[-]time training officer for the last two years, and he's also intimately familiar with the expectations of [City] police officers. He can testify to all of that, and that's all directly relevant to the scope of duties of a [City] police officer.

R.R. at 1013a-1014a. A lengthy exchange between counsel and the trial court ensued:

> [McGuire's Counsel]: Okay. The purpose of [Swartzwelder's] testimony is for him to testify about the disciplinary procedures for [City] Police; the scope of duties of a [City] police officer, what he is, what [he/she is] not expected to do; what the policies mean from the perspective of a [City] police officer; and whether or not Neidig was acting as a police officer in accordance with those policies when the interaction with McGuire took place.
>
> THE COURT: So you're submitting [Swartzwelder] as an expert witness?
>
> [McGuire's Counsel]: I am not. He is a fact witness regarding [City] policies and procedures. It's very much the same as [Chief] Schubert was testifying about [City] policies and procedures.
>
> They got to hear from [the] management side about, you know, what are the expectation[s] of [City] police officers, and he offered an opinion on whether or not [] Neidig was acting as a [City] police officer and was acting within the scope of his duties as a [City] police officer.
>
> We are entitled then to get the FOP's perspective. They also have a lot of -- Swartzwelder also has a lot of

27

knowledge and information about this, and we're entitled to put that into the record, as well, so the jury can consider both sides.

. . . .

THE COURT: Was [Neidig] suspended?

[McGuire's Counsel]: No, but he should -- but --

THE COURT: He should have been?

[McGuire's Counsel]: Well, if he was acting outside of the scope of his duties, if the City thought that, he should have been. And it's up to the jury to decide bias and credibility of the witnesses.

THE COURT: I'm ruling I don't want anything about penalty proceedings here because he wasn't penalized.

. . . .

[City's Counsel]: . . . . The City would also object to [Swartzwelder] testifying as to his opinion with regards to [] Neidig and his actions and whether they comport with the policies and whether they were appropriate actions. That's expert testimony. Swartzwelder has not offered a report, in accordance with the rules. He cannot come here and testify as an expert witness today.

[McGuire's Counsel]: Your Honor, [Chief] Schubert offered exactly the same opinion.

THE COURT: Wasn't he your witness?

[McGuire's Counsel]: On cross.

THE COURT: Yeah. Well, you offered him. You're bound by that.

[McGuire's Counsel]: We didn't offer him as an expert.

THE COURT: You called him.

[McGuire's Counsel]: But we didn't offer him as an expert.

28

THE COURT: It doesn't matter. You called him. You're bound by what he says.

[McGuire' Counsel]: But we called him as on cross[-examination]. They then called him on direct, and in their direct they asked him to offer an opinion about whether or not [] Neidig was acting within the scope of his duties as a [City] police officer based on his understanding of the facts, and [] [Chief] Schubert was allowed to -- Chief Schubert was allowed to offer that opinion. We are now, I think, entitled to bring on another opinion, the president of the FOP.

THE COURT: Wait a minute. [Chief] Schubert would be in the line of discipline, would he not?

[City's Counsel]: Yes.

[McGuire's Counsel]: Yes, but [] Swartzwelder would also have been involved in the disciplinary process because -

THE COURT: He's not in the line of discipline. He can't impose any discipline.

. . . .

THE COURT: Had [Neidig] been disciplined, they would have filed a grievance. I think he can say that. I mean, he knows when to file a grievance. But you have to watch. I agree that if he's going to start giving opinions, then he should file -- there should have been a report filed of some sort.

[McGuire's Counsel]: Again, Your Honor, we are proffering him as a fact witness regarding the [City's] policies and procedures and the scope of duties of a City [] police officer.

He's not going to testify about the general scope of duties of police officers, you know, worldwide or what, you know, most police departments do. He's going to testify specifically about the [City's] policies and . . . procedures and whether or not [Neidig's] conduct was in compliance.

THE COURT: But he is not a -- he is a patrolman, I believe.

29

[McGuire's Counsel]: He is a patrolman. He has been until two years.

THE COURT: He has no rank in the City, so to speak. He's not a sergeant, he's not a lieutenant, he's not a captain, he's not a chief, right?

[McGuire's Counsel]: No. He's a patrolman, and he's president of the FOP, and now he's one of the head training officers.

THE COURT: If you use that topic of head training officer, then they refer back, 'Where is the opinion?'

[City's Counsel]: Exactly.

. . . .

[McGuire's Counsel]: Yes. But they are basically saying, 'Well, he was outside the scope of his duties, he was on his personal time, and that has nothing to do with us.' What we want Swartzwelder to testify to is he could be disciplined for his off-duty conduct.

There are policies that say that he can be disciplined for his off-duty conduct. And if they really thought he did all these horrible things that they're now saying that he did, they could have disciplined him back then, and they never did.

THE COURT: Well, if he's going to testify that he can be disciplined for off-duty conduct, yes, I'll allow that. Okay. But I don't know -- but if he gets in to say, for instance, 'Well, Neidig's conduct didn't reach that level,' then no, because then that's an opinion. Okay?

He can testify that, you know, there are certain instances where certain off-duty conduct can result in disciplinary action. But I think this doesn't go with the thrust of your case to date. It's up to you how you try your case. But the whole thing is he wasn't disciplined, you know.

[McGuire's Counsel]: Respectfully, Your Honor, I think that it absolutely does, because our whole point is he wasn't disciplined and he absolutely could have been.

30

THE COURT: Well, that's a new twist. Before it was -- whatever. But he can't offer an opinion. I don't want you to get into whether or not this guy was penalized or not. He can say he's a training -- head training officer, whatever it is, and that there are instances when you can be disciplined for even off-duty conduct. Okay?

[McGuire's Counsel]: Can he testify about the training that [City] officers like Neidig receive?

THE COURT: Yes, he can.

[McGuire's Counsel]: About what their scope of duties are?

[City's Counsel]: Neidig was trained prior to 2012, prior to the time that he was, I think, a training officer at all, and I think he's a training officer on firearms. I don't know if he's a training officer on off-duty conduct.

[McGuire's Counsel]: He actually is. He trains on the statute that gives them -- primary jurisdiction statute.

THE COURT: But this Neidig had been a cop for a while when this happened, had he not?

[City's Counsel]: Yeah, six years.

THE COURT: Six years. That's what I thought. So was [] Swartzwelder the training officer in 2006?

[McGuire's Counsel]: He was not the head training officer. He did give training back then. I can confirm with him whether or not he was training on the primary jurisdiction statute six years ago.

THE COURT: All right. Well, I'm allowing this for this limited purpose. If he gets into opinions, I'll just stop it, close it down and we're done.

R.R. at 1014a-1027a.

As the trial court recognized, Swartzwelder does not supervise police officers. Rather, Swartzwelder is a patrolman and the FOP President who has purportedly been involved in disciplinary proceedings. Swartzwelder was permitted

31

to testify to facts within his knowledge. McGuire could have called Swartzwelder as an expert witness after he properly notified the City's counsel and prepared and provided an expert report. He did not do so. Under these circumstances, this Court concludes that the trial court's decision to preclude Swartzwelder's opinion testimony was not "manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record." *O'Layer McCready*, 204 A.3d at 1018 n.6 (quotation marks omitted).

McGuire also argues that when Neidig's Federal Court Action attorney Paul Krepps (Krepps) testified, the trial court improperly intervened in his examination, elicited misleading testimony and prevented Krepps from clarifying his answers. McGuire references a short portion of Krepps' testimony during which the trial court sought to clarify a question and asked Krepps a few questions. *See* R.R. at 1005a-1007a. The record reflects that McGuire did not timely and specifically object to the trial court's alleged inappropriate intervention and questioning. *See DY Props.* Accordingly, McGuire did not preserve this issue, and this Court may not consider it. *See id.*

Additionally, McGuire asserts that the trial court erred by permitting the City to publish photographs of his injuries to the jury, arguing that "permitting the jury to have an extended, up-close view of those injuries in theatrical fashion by parading them around was unnecessary and prejudicial." McGuire Br. at 37-38. However, McGuire provides no relevant legal authority in his brief to support that argument. This Court has held that a party waives an issue if he neglects to cite to relevant legal authority in his brief. *See Am. Rock Mechs., Inc. v. Workers' Comp. Appeal Bd. (Bik & Lehigh Concrete Techs.)*, 881 A.2d 54 (Pa. Cmwlth. 2005). Accordingly, this issue is waived.

## V. Jury Charge

McGuire also proffers that the trial court erred when it included in its jury charge that Neidig had used "intentional and excessive force," and instructed the jury to consider whether the City expected him to do so. Citing *Glider v. Department of Highways*, 255 A.2d 542 (Pa. 1969), McGuire contends that he is entitled to a new trial since an "error in a charge is [a] sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than to clarify a material issue[.]" *Id*. at 547.

McGuire specifically challenges the following trial court jury charge:

> In determining whether the acts of the employee were within the course and scope of the employment, you should consider the following factors: First, whether the act was of a kind and nature that the employee was employed to perform. Second, whether the act occurred substantially within the authorized time and space limits.

> Third, whether the act was undertook, at least in part, by a purpose to serve the employer. And, fourth, **whether the intentional and excessive force used by the employee was not expected by the employer**.

R.R. at 1181a (emphasis added). McGuire declares:

> The trial court's instruction as to the fourth factor was legally incorrect and misleading and rendered the entire charge regarding course and scope of employment inadequate and unclear. McGuire objected to the instruction at the charge conference and argued that it should read: '. . . whether the force used by the employee was not unexpected by the employer.' (R.[R. at] 1117a-[111]8a)[.] The trial court agreed to remove 'intentional and excessive' from the instruction, however, when he read the instructions to the jury the language had not been removed. (R.[R. at] 1117a-[111]8a).

33

McGuire Br. at 42 (citations omitted).  In addition, McGuire contends that the trial court's use of the word *expected* through its erroneous removal of the prefix *un* changed the burden of proof.  *See* R.R. at 1181a.  Specifically, McGuire proclaims:

> [B]y instructing the jury to consider 'whether the intentional and excessive force used by the employee was not expected by the employer' the trial court raised McGuire's burden from showing that the [City] expected its officers to use force in the scope of their duties, to showing that it expected its officers to use 'excessive' force when performing their duties.

McGuire Br. at 42-43.

> The Commonwealth Court 'is obligated to apply an abuse of discretion standard in reviewing a trial court's denial of a motion for a new trial, and may overturn the trial court's determination only if that court abused its discretion.' *Ball v. Bayard Pump & Tank Co.*, . . . 67 A.3d 759, 767 ([Pa.] 2013) (citation omitted).  'It is well settled that in reviewing a challenge to a jury instruction the charge, as a whole, must be considered.  Furthermore, the trial court has broad discretion in phrasing the instructions, so long as the directions given 'clearly, adequately, and accurately' reflect the law.' *Commonwealth v. Lesko*, . . . 15 A.3d 345, 397 ([Pa.] 2011) (citation omitted).  'Error in a charge is [a] sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue.  A charge will be found adequate unless 'the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error.'' *Stewart v. Motts*, . . . 654 A.2d 535, 540 ([Pa.] 1995) (citations omitted).  Further, '[a] reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental.  In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety.' *Id*.  'The harmless error doctrine underlies every decision to grant or deny a new trial.  A new trial is not warranted

34

> merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.' *Harman ex rel. Harman v. Borah*, . . . 756 A.2d 1116, 1122 ([Pa.] 2000).

*Grove v. Port Auth. of Allegheny Cnty.*, 218 A.3d 877, 887-88 (Pa. 2019).

Initially, given that McGuire's burden of proof argument is unsupported by legal authority, it is waived. *See Am. Rock Mechs.* With respect to McGuire's other jury charge arguments, the trial court described the four factors the jury was to consider. At McGuire's counsel's request, to reflect Section 228 of the Restatement, the trial court agreed to omit the terms *intentional* and *excessive* when describing the fourth factor, but neglected to do so when it charged the jury. *See* R.R. at 1117a-1119a, 1181a.

Nonetheless, the Federal Court Action verdict sheet[14] reflected that the federal jury had determined that Neidig **had** used "excessive force." R.R. at 19a. Thus, although the trial court had agreed to use the Restatement language, this Court discerns no prejudice from the trial court's error, since the force referenced in the Restatement's fourth factor was, in the instant matter, the same force the federal jury had determined was "excessive," and the focus of the fourth factor was **not** the nature of the force used, but whether the force used was unexpected by the employer.

Finally, with respect to the trial court's omission of the prefix *un*, that factor was one of four the jury was to "consider" "[i]n determining whether the acts of the employee were within the course and scope of the employment[.]" R.R. at 1181a. The jury charge did not direct the jury that the factor was or was not indicative of acts within or without the scope of employment, only that it was relevant. It merely informed the jury that the factor was to be "consider[ed.]" R.R.

---

[14] The Federal Court Action verdict sheet was admitted into evidence before the trial court. *See* R.R. at 739a-740a.

at 1181a. Whether the jury charge contained the word *expected* or *unexpected* did not change the consideration of this factor nor did it attach a particular implication to the factor being "consider[ed.]" R.R. at 1181a. In addition, McGuire has not demonstrated that the jury was "palpably misled by what the trial judge said" or that there was "an omission in the charge which amounts to fundamental error." *Grove*, 218 A.3d at 888 (quotation marks omitted). Accordingly, there is no basis for this Court to grant a new trial.

## VI. Willful Misconduct

McGuire next argues that the trial court erred when it denied indemnification absent a judicial determination in the Federal Court Action that Neidig committed willful misconduct. McGuire also asserts that the trial court erroneously permitted the City to present evidence and argument that Neidig engaged in willful misconduct. This Court emphasizes that under Section 8548(a) of the Tort Claims Act, a municipality need only indemnify an employee if that employee was acting within the scope of his office or duties at the time the employee caused the injury. Because the jury properly determined that Neidig acted beyond the scope of his employment, and the jury did not reach the willful misconduct issue, this Court need not address McGuire's willful misconduct arguments.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

36

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shane McGuire on behalf of     :
Colby Neidig,                 :
         Appellant       :
                           :
        v.                   :
                           :   No. 141 C.D. 2020
City of Pittsburgh          :

## O R D E R

AND NOW, this 10th day of March, 2021, the Allegheny County Common Pleas Court's January 3, 2020 order is AFFIRMED. Shane McGuire's Application for Motion to Strike Portions of Appellee's Brief is DENIED.

_____
ANNE E. COVEY, Judge